IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIE BOUCHARD ) | COMPLAINT |
| ) | |
| ) | |
| ) | Docket No. 1:15-cv-5920 |
| Plaintiff, ) | |
| v. ) | PLAINTIFF DEMANDS A |
| ) | TRIAL BY JURY |
| UNITED STATES TENNIS ASSOCIATION, ) | |
| INC. and USTA NATIONAL TENNIS ) | |
| CENTER, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Eugenie Bouchard, by her attorneys MORELLI RATNER LAW FIRM, PLLC,

respectfully alleges as follows:

## NATURE OF THE CASE

1.      This is a civil action for personal injuries suffered by Plaintiff Eugenie Bouchard

against Defendants United States Tennis Association, Inc. ("USTA") and USTA National Tennis

Center, Inc. ("NTC") (collectively "Defendants").  This action arises out of accident on

September 4, 2015 when Ms. Bouchard was caused to slip and fall on a dangerous condition

created by the Defendants in the physiotherapy room attendant to the women's locker room after

winning her mixed-doubles match at the 2015 U.S. Open Tennis Championships.  As a result of

her fall, Ms. Bouchard sustained a severe head injury and was forced to withdraw from the entire

tournament.  The Defendants' negligence was a substantial contributing factor in causing Ms.

Bouchard's injuries.

1

## PARTIES

2.     Plaintiff, Eugenie Bouchard is an individual and citizen of Canada. Ms. Bouchard resides in both Montreal, Quebec and Miami, Florida. She is a twenty-one year-old professional tennis player. Ms. Bouchard has been ranked as high as number five in the world, and has been to the finals of Wimbledon and the semifinals of the French and Australian Opens.

3.     Defendant United States Tennis Association, Inc. is the national governing body for the sport of tennis in the United States. The USTA owns, organizes, and operates the U.S. Open Tennis Championships ("U.S. Open"), the largest and most prestigious tennis tournament played annually in the United States. The USTA is a New York State domestic corporation with its principle place of business located at 70 West Red Oak Lane, White Plains, New York, Westchester County.

4.     Defendant USTA National Tennis Center, Inc. is a New York not-for-profit Corporation, whose principal place of business is located at 70 West Red Oak Lane, White Plains, New York. The NTC is the site of the annual U.S. Open. The NTC also has an office at Flushing Meadows-Corona Park, Flushing, New York.

## VENUE AND JURISDICTION

5.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332, in that the amount of controversy exceeds seventy five thousand dollars ($75,000) and Plaintiff is a citizen of a state which is different from the state where Defendants are incorporated and have their principal places of business.

6.     Venue is proper in this district because the accident occurred at the NTC, which is located in the County of Queens, State of New York and falls within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

7.      The U.S. Open is the largest and most competitive professional tennis tournament played annually in the United States, and is one of only four Grand Slam tournaments on the professional tour.  The tournament takes place over approximately two weeks in late-August/early-September, and is a single-elimination format.

8.      Ms. Bouchard competed in the 2015 U.S. Open in the women's singles, women's doubles and mixed doubles brackets.  She was the number twenty five (25) ranked player in the women's singles bracket.

9.      The prize money for the tournament is substantial.  For example, the winner of the women's singles bracket is awarded approximately $3.3 million.

10.     Additionally, because the U.S. Open is the most highly viewed tennis tournament played in the U.S. each year, players' participation in this tournament is highly valued by companies who endorse them.  Ms. Bouchard is endorsed by numerous companies including Nike, Babolat, Rolex and Diet Coke.

11.     On September 4, 2015, Ms. Bouchard competed in two matches.  In the morning, she won her third-round singles match against Dominika Cibulkova to advance to the round of sixteen.  In the evening, she played in a mixed doubles match that began at approximately 8:00PM.  She and her partner Nick Kyrgios defeated Elina Svitolina and Artem Sitak to advance to the second round.  The match ended at approximately 10PM.  Ms. Bouchard was scheduled to play two matches the following day.

12.     After the match, Ms. Bouchard returned to the women's locker room.

13.     The women's locker room contained a physiotherapy room.

14.     The physiotherapy room contained cold tubs or ice baths for use by the players.

3

15.     The physiotherapy room had a tiled floor.

16.     Ms. Bouchard entered the physiotherapy room of the women's locker room when she was caused to slip and fall by a slippery, foreign and dangerous substance on the floor.

17.     The Defendants caused or created this slippery, foreign and dangerous substance to be on the floor, or knew or should have known that the slippery, foreign and dangerous substance was on the floor.

18.     The Defendants failed to provide Ms. Bouchard with any warnings whatsoever regarding the aforementioned dangerous condition.

19.     As a result of her fall, Ms. Bouchard sustained a severe injury to her head, including, but not limited to, a concussion.

20.     As a result of her severe head injury, Ms. Bouchard was forced to withdraw from all competitions in the 2015 U.S. Open.  At the time she was forced to withdraw, Ms. Bouchard was still in contention for the championships in women's singles, women's doubles and mixed doubles.  She was the only female player still in contention in all three brackets.

21.     As a result of her severe head injury, Ms. Bouchard was also forced to withdraw or retire from several subsequent tournaments, including the Japan Women's Open, Wuhan Open, China Open and Hong Kong Open.

22.     As a result of Ms. Bouchard withdrawing from the 2015 U.S. Open and subsequent tournaments, her world ranking has dropped thirteen spots, and is likely to continue to drop.

**First Count**
**Negligence (USTA)**

23.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

4

24.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees owned the premises.

25.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees operated the premises.

26.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees maintained the premises.

27.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees managed the premises.

28.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees controlled the premises.

29.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees leased the premises.

30.     At all relevant times, it was the duty of the Defendant USTA, its servants, agents, lessees, permittees independent contractors and/or employees to maintain, clean and repair the women's locker room and physiotherapy room in a reasonably safe and suitable condition.

31.     At all relevant times, it was the duty of Defendant USTA, its servants, agents, lessees, permittees independent contractors and/or employees, to warn Plaintiff and others similarly situated of any unsafe and hazardous conditions on the floor of the physiotherapy room by color, markings, signs and other warnings.

32.     On September 4, 2015, Ms. Bouchard was lawfully in the women's locker room and physiotherapy room.

33.     On September 4, 2015, Ms. Bouchard was caused to slip and fall because of a hazardous, defective and unsafe condition on the floor of the physiotherapy room.

34.     At all relevant times, Defendant USTA, its servants, agents, lessees, permittees, independent contractors and/or employees, failed to maintain, clean and repair the women's locker room and physiotherapy room in a reasonably safe and suitable condition.

35.     At all relevant times, Defendant USTA, its servants, agents, lessees, permittees, independent contractors and/or employees, failed to maintain, clean and repair the floor of the physiotherapy room in the women's locker room in a reasonably safe and suitable condition.

36.     As a result of the hazardous and unsafe conditions, Ms. Bouchard was caused to sustain a severe head injury.

37.     The aforesaid described incident and the resulting injuries to Ms. Bouchard were caused solely by the reason of the carelessness, negligence, wanton and willful disregard on the part of Defendant USTA, its servants, agents, lessees, permittees, independent contractors and/or employees, without any negligence on the part of Ms. Bouchard contributing thereto.

38.     Defendant USTA is liable for negligence, negligence per se, res ipsa loquitor, respondeat superior and vicarious liability.

39.     Defendant USTA caused and created the dangerous conditions described above.

40.     Defendant USTA had actual and/or constructive prior notice of the dangerous conditions described above.

41.     As a direct and proximate result of the injuries Ms. Bouchard sustained in the accident, she has been damaged and endured and continues to endure severe pain and suffering, and incurred and continues to incur significant economic loss, medical expenses and loss of enjoyment of life.

## Second Count
## Negligence (NTC)

42.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

43.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees owned the premises.

44.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees operated the premises.

45.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees maintained the premises.

46.     On September 4, 2015, Defendant, its servants, agents, lessees, permitees, independent contractors and/or employees managed the premises.

47.     On September 4, 2015, Defendant NTC, its servants, agents, lessees, permitees, independent contractors and/or employees controlled the premises.

48.     On September 4, 2015, Defendant NTC, its servants, agents, lessees, permitees, independent contractors and/or employees leased the premises.

49.     At all relevant times, it was the duty of the Defendant NTC, its servants, agents, lessees, permittees, independent contractors and/or employees to maintain, clean and repair the women's locker room and physiotherapy room in a reasonably safe and suitable condition.

50.     At all relevant times, it was the duty of Defendant NTC, its servants, agents, lessees, permittees, independent contractors and/or employees, to warn Plaintiff and others similarly situated of any unsafe and hazardous conditions on the floor of the physiotherapy room by color, markings, signs and other warnings.

51.     On September 4, 2015, Ms. Bouchard was lawfully in the women's locker room and physiotherapy room.

52.     On September 4, 2015, Ms. Bouchard was caused to slip and fall because of a hazardous, defective and unsafe condition on the floor of the physiotherapy room.

53.     At all relevant times, Defendant NTC, its servants, agents, lessees, permittees, independent contractors and/or employees, failed to maintain, clean and repair the women's locker room and physiotherapy room in a reasonably safe and suitable condition.

54.     At all relevant times, Defendant NTC, its servants, agents, lessees, permittees, independent contractors and/or employees, failed to maintain, clean and repair the floor of the physiotherapy room in the women's locker room in a reasonably safe and suitable condition.

55.     As a result of the hazardous and unsafe conditions, Ms. Bouchard was caused to sustain a severe head injury.

56.     The aforesaid described incident and the resulting injuries to Ms. Bouchard were caused solely by the reason of the carelessness, negligence, wanton and willful disregard on the part of Defendant NTC, its servants, agents, lessees, permittees, independent contractors and/or employees, without any negligence on the part of Ms. Bouchard contributing thereto.

57.     Defendant NTC is liable for negligence, negligence per se, res ipsa loquitor, respondeat superior and vicarious liability.

58.     Defendant NTC caused and created the conditions described above.

59.     Defendant NTC had actual and/or constructive, prior notice of the conditions described above.

60.     As a direct and proximate result of the injuries Ms. Bouchard sustained in the accident, Ms. Bouchard has been damaged and endured and continues to endure severe pain and

suffering, and incurred and continues to incur significant economic loss, medical expenses and loss of enjoyment of life.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial as to all issues so triable as a matter of right, pursuant to F.R.C.P. 38(b)(1) and 38(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands upon Defendants:

a.      actual, compensatory and statutory damages;

b.      punitive damages as allowed by law;

c.      pre and post-judgment interest as allowed by law;

d.      injunctive relief;

e.      an award of attorneys' fees as allowed by law;

f.      an award of taxable costs; and

g.      any and all such further relief as this Court deems just and proper.

MORELLI RATNER LAW FIRM, PLLC

By: _____

Benedict P. Morelli
EDNY Bar No.: BM6597
bmorelli@morellilaw.com

David T. Sirotkin
EDNY Bar No.:DS4863
dsirotkin@morellilaw.com

Perry S. Fallick
EDNY Bar No.: PF1165
pfallick@morellilaw.com

777 Third Avenue, 31st Floor
New York, New York 10017
Tel:  (212) 751-9800
Fax: (212) 751-0046

Attorneys for Plaintiff

Date: October 13, 2015