**1IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EUGENIE BOUCHARD | ) |
| | ) |
| | ) |
| | ) Civ. Act. No.:1:15-cv-5920-AMD-MDG |
| Plaintiff, | ) |
| v. | ) Judge Ann M. Donnelly |
| | ) |
| | ) Magistrate Judge Lois Bloom |
| UNITED STATES TENNIS ASSOCIATION, | ) |
| INC., and USTA NATIONAL TENNIS | ) |
| CENTER, INC. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY**

Benedict P. Morelli
David T. Sirotkin
Perry S. Fallick
**MORELLI LAW FIRM PLLC**
777 Third Avenue, 31st Floor
New York, NY 10017
T: (212) 751-9800
F: (212) 751-0046

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ……………………………………………………………1

ARGUMENT……………………………………………………………………………....5

I.    The Sanction of an Adverse Inference Jury Instruction is
      Warranted because Defendants Intentionally Deprived Plaintiff of
      Highly Relevant Security Camera Footage that Cannot be Restored or
      Replaced through Additional Discovery………………………………………....…...5

      A.    The USTA Failed to Institute a "Litigation Hold"
            to Preserve Relevant Evidence ………………...………………….…………...5

            1.   The USTA had a Legal Obligation to Preserve
                 All Potentially Relevant Evidence Regardless of
                 Whether the Plaintiff Ever Sent a Preservation Letter …………….…......8

            2.   The Timing of Plaintiff's Discovery Requests are Irrelevant
                 Because the USTA Conceded that it Destroyed All Additional
                 Security Camera Footage 160 Days after Plaintiff's Accident ………………9

      B.    The Security Footage Was Intentionally Destroyed and
            Therefore its Relevance Should Be Presumed …………………………………10

            1.   The USTA's Pattern of Deceptive Conduct is
                 Sufficient Circumstantial Evidence to Prove Intent …………………………...11

            2.   The USTA Unilaterally Decided What Evidence it Deemed Relevant
                 and Willfully Destroyed All Evidence it Deemed Irrelevant or Harmful…...12

      C.    The Security Footage Was Intentionally Destroyed and
            Therefore its Relevance Should Be Presumed …………………………………17

      D.    Plaintiff has been Prejudiced by Defendants' Destruction of Evidence……...…19

      E.    The Sanction of an Adverse Jury Instruction is Warranted for
            Defendants' Willful Destruction of the Security Camera Footage……………...20

CONCLUSION…………………………………..…………………………………………21

**Cases**

*CAT3, LLC v. Black Lineage, Inc.*,
    164 F. Supp. 3d 488 (S.D.N.Y. 2016) ................................................................................ 12

*Condit v. Dunne*,
    225 F.R.D. 100 (S.D.N.Y. 2004) ...................................................................................... 10

*Dataflow, Inc. v. Peerless Ins. Co.*,
    No. 3:11-CV-1127 LEK/DEP, 2013 WL 6992130 (N.D.N.Y. June 6, 2013) ......................... 10

*Essenter v. Cumberland Farms, Inc.*,
    No. 1:09-CV-0539 LEK DRH, 2011 WL 124505 (N.D.N.Y. Jan. 14, 2011) .............. 13, 15, 17

*F.D.I.C. v. Horn*,
    No. CV 12-5958 DRH AKT, 2015 WL 1529824 (E.D.N.Y. Mar. 31, 2015) ........................... 6

*Harkabi v. SanDisk Corp.*,
    275 F.R.D. 414 (S.D.N.Y. 2010) ........................................................................................ 6

*Hawley v. Mphasis Corp.*,
    302 F.R.D. 37 (S.D.N.Y. 2014) ....................................................................................... 11

*Lacey v. Target Corp.*,
    No. 13 CV 4098 RML, 2015 WL 2254968 (E.D.N.Y. May 13, 2015) ................................. 18

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    271 F.R.D. 429 (S.D.N.Y. 2010) ..................................................................................... 10

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.,*
    *Sec.*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010) ................................................................... 7, 11

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002) .............................................................................................. 18

*Sekisui Am. Corp. v. Hart*,
    945 F. Supp. 2d 494 (S.D.N.Y. 2013) .............................................................................. 11

*Williams v. N.Y. City Transit Auth.*,
    No. 10 CV 0882 ENV, 2011 WL 5024280 (E.D.N.Y. Oct. 19, 2011) ..................................... 8

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................... 6, 13

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................... passim

**Rules**

Fed. R. Civ. P. 37 ............................................................................................................ 1, 2, 12, 21

## PRELIMINARY STATEMENT

Plaintiff Eugenie Bouchard respectfully submits this Memorandum of Law in Reply and in further support of her Motion, pursuant to Fed. R. Civ. P. 37(b), 37(e), and this Court's inherent authority, for an Order granting sanctions against the United States Tennis Association, Inc., and USTA National Tennis Center, Inc.'s (collectively hereinafter "Defendants" or "USTA") for spoliation of evidence, specifically: (1) an adverse inference jury instruction against Defendants for intentionally depriving Plaintiff of relevant evidence that would have been favorable to Plaintiff and adverse to the interests of Defendants; (2) punitive monetary sanctions; (3) an assessment against Defendants for the costs and fees incurred by the Plaintiff on this Motion; and (4) such other relief as this Court deems just and proper.

The USTA willfully destroyed all but three-hours of video footage from a single security camera – unilaterally chosen by the USTA – from the night of Plaintiff's accident, despite having been specifically notified by the Plaintiff to preserve any such evidence and despite having had a legal obligation to immediately cease any routine data retention/destruction policies and put in place a "litigation hold."    Taken as a whole, the Defendants' deceptive conduct throughout this litigation evidences a clear pattern of willful behavior specifically designed to protect the USTA at all costs while attempting to blame Ms. Bouchard for this accident and frustrating her ability to fully and fairly litigate her case.    This willful conduct warrants severe sanctions that should serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine, including, but not limited to, an adverse inference jury instruction.

The Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions (hereinafter "Def. Memo of Law") makes it abundantly clear that either the Defendants utterly

fail to understand their legal obligations to preserve all potentially relevant evidence, or they are feigning ignorance regarding their obligations.   The USTA even acknowledges its own sanctionable conduct by admitting that the deleted security camera footage was only preserved for 160 days pursuant to the USTA's normal and routine policy and procedure.   Failing to institute a "litigation hold" and only preserving this relevant evidence "for a specified duration pursuant to established policy and procedure" is completely contrary to what the law requires. (Def. Memo of Law at 13.)   This only further proves that Defendants either fail to understand, or intentionally fail to acknowledge, their clear obligations under the law.

The USTA would like to have this Court believe that Plaintiff's motion for sanctions is based on speculation and was brought solely in order to portray the USTA in a bad light. Nothing could be further from the truth.   In fact, Plaintiff's motion is based exclusively on facts and evidence in the record.   Moreover, Plaintiff did not need to bring a sanctions motion to portray the USTA in a bad light – the USTA has painted itself in a bad light through its pattern of intentionally deceptive conduct throughout the discovery process.

Despite the Defendants' misguided attempts to divert this Court's attention from their own misdeeds by patting themselves on the back for what discovery they actually did provide, the following undisputed facts clearly prove Plaintiff is entitled to substantial sanctions: (1) Defendants were on notice of potential litigation, required to preserve all potentially relevant evidence, suspend its routine document retention/destruction policy and put in place a "litigation hold," as early as September 5, 2015, the day following Ms. Bouchard's accident, and no later than September 16, 2015, when the USTA received Plaintiff's preservation letter; (2) pursuant to this obligation, the USTA was required to *preserve* and *not destroy any unique, relevant*

2

evidence that *might* be useful to the Plaintiff; (3) Defendants have not provided *any evidence* whatsoever that the USTA ever fulfilled its legal obligations and implemented any "litigation hold," either by submitting an affidavit of an attorney with knowledge or by producing the written "litigation hold" itself – the absence of such evidence speaks volumes; (4) even if there was evidence that Defendants put a "litigation hold" in place – there is none – the USTA has not provided any evidence that it subsequently upheld its obligations by having attorneys oversee compliance with any alleged "litigation hold," monitoring its efforts to retain and produce relevant evidence; (5) in Defendants' Rule 26 Initial Disclosures, they unilaterally cherry-picked and produced only three-hours of video footage from a single security camera that the USTA itself decided was relevant; (6) by Defendants own admission, on February 11, 2016 (only 160 days after Plaintiff's accident), months before a single deposition was taken, the USTA willfully destroyed *all* additional video footage from the night of Plaintiff's accident; and (7) that video footage cannot be restored or replaced through additional discovery and Plaintiff can never know what was shown on that footage.   These undisputed facts are more than enough to warrant severe sanctions against the USTA.

Unsurprisingly, Defendants' Opposition continues the USTA's pattern of failing to take responsibility for their own conduct and, instead, blames the Plaintiff.   Does the USTA take responsibility for their actions by acknowledging that they flouted their legal obligation to preserve relevant evidence?   Of course not.   Instead, Defendants shirk the spirit of discovery, try to disingenuously mince words and use subterfuge in an effort to disguise the true issue at hand—Defendants' willful destruction of highly relevant security camera footage.   For example, the Defendants focus on the literal words of Plaintiff's preservation letter in a

misguided argument about which security cameras were or were not "surrounding" the women's locker room.   This argument is laughable for multiple reasons.   First, as the USTA either knows or should know, its legal obligation to preserve all potentially relevant evidence arose once it had notice of the potential litigation, regardless of whether the Plaintiff ever sent a preservation letter.   Plaintiff sent its preservation letter in an abundance of caution and went above and beyond what the law requires.   Second, the USTA concedes in its opposition that multiple security cameras, from which the video footage was admittedly destroyed, were located just down the hall and within a mere 66 or 120 feet of the women's locker room.   For the USTA to argue that these additional cameras – which are located in the very same hallway and in close proximity to the women's locker room – are somehow not "surrounding" the women's locker room flies in the face of reason.   Third, the Defendants blame their destruction of the relevant evidence on the timing of Plaintiff's discovery requests.   In doing so, the USTA ignores the fact that it has admitted that all additional security camera footage was destroyed as of February 11, 2016 (or 160 days after Plaintiff's accident), and at such an early stage of discovery that no depositions had even been held.   This argument also fails because the USTA had a continuing obligation to preserve all potentially relevant evidence.   They failed to do so.

In sum, in its Opposition, the USTA takes the same tactic that they have taken since the inception of this litigation, namely, refuse to take responsibility for its own conduct while blaming Ms. Bouchard in whole or in part.   Unfortunately for the USTA, the law of spoliation of evidence is clear and requires that the USTA be punished with severe sanctions, including, but not limited to, an adverse inference instruction.

**ARGUMENT**

I.      **The Sanction of an Adverse Inference Jury Instruction is
        Warranted Because Defendants' Intentionally Deprived
        Plaintiff of Highly Relevant Security Camera Footage that
        Cannot be Restored or Replaced through Additional Discovery.**

The central question implicated by this motion is whether the USTA and its counsel took all necessary steps to guarantee that relevant information was both preserved and produced in discovery.   If the answer is "no," then the next question is whether the USTA acted willfully when it deleted the relevant security camera footage – resulting in a complete and permanent loss of the relevant evidence.   If the USTA acted willfully, this satisfies the mental culpability prong of the adverse inference test and also demonstrates that the deleted material was relevant.   *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004).

A.   **The USTA Failed to Institute a "Litigation Hold" to Preserve Relevant Evidence.**

The USTA has provided absolutely no evidence whatsoever that it ever implemented a "litigation hold" and suspended its routine data retention/destruction policy once litigation was reasonably anticipated.   To the contrary, the Defendants admit that they kept their "normal and ordinary" retention policy of 160 days in place, despite the fact that litigation was reasonably anticipated and, in fact, had already begun.   (Def. Memo of Law at 15).   Unfortunately for the USTA, these were not "normal and ordinary" circumstances.   Had the USTA actually implemented a "litigation hold," it could have easily submitted an affidavit from an attorney with knowledge or produced a copy of the written "litigation hold" itself.   The USTA failed in both respects.   Instead, given the opportunity to provide such evidence in its Opposition, all the USTA could conjure up was a single self-serving conclusory statement in a footnote without any actual support.   (*See* Def. Memo of Law at 28.)   The USTA's failure to institute a "litigation

5

hold" or to institute any of the "widely-recognized steps to preserve" data is an important consideration for a court when evaluating culpability.   *See Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 419 (S.D.N.Y. 2010) (defendant acted with a culpable state of mind in destroying or losing electronic evidence sought by plaintiffs during discovery; although defendant's in-house counsel was involved in several steps of preservation and collection process, counsel did not supervise or even approve the copying and wiping of laptop hard drives and was not involved in the transfer of email archives); *see also F.D.I.C. v. Horn*, No. CV 12-5958 DRH AKT, 2015 WL 1529824, at *10 (E.D.N.Y. Mar. 31, 2015) (*court may consider parties status as an attorney* and fact that he certainly should have been aware of the preservation requirements of litigation).

It is well-established that "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."   *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (jury given an adverse inference instruction as sanction for the willful destruction of relevant e-mails by defendant's employees).   Pursuant to this obligation, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary."   *Zubulake*, 220 F.R.D. at 217.   "A party's discovery obligations do not end with the implementation of a "litigation hold"—to the contrary, that's only the beginning.   Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents."[1]   *Zubulake*, 229 F.R.D. at 432.

---

1 Once a "litigation hold" is in place, a party and its counsel must make certain all sources of potentially relevant information are identified and placed "on hold"; in the context of electronic discovery, counsel must become fully familiar with its client's document retention policies, as well as the client's data retention architecture.   *See Zubulake*, 229 F.R.D. at 432.   "In short, it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information.   Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."   *Zubulake*, 229 F.R.D. at 432.

As is the situation here, Defendants' failure to issue a written "litigation hold," may be considered particularly egregious "because that failure is likely to result in the destruction of relevant information."   *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).

Here, it remains unclear whether the USTA is even aware of its common law duty to preserve relevant evidence, much less the workings of its own data retention architecture.   For example, there is no evidence that, despite the USTA's in-house counsel beginning an investigation less than twenty-four hours after Ms. Bouchard's accident, that any instructions were provided to USTA employees not to destroy or delete material potentially relevant to Ms. Bouchard's claims.   In fact, Defendants concede the exact opposite.   (*See* Def. Memo of Law at 15 ("Defendants' employees simply carr[ied] out their *normal and everyday protocol* as it related to the preservation of security camera video footage."))   They admittedly did *nothing different*, and continued on with business as usual.   These admissions prove the USTA never instituted a "litigation hold" even after Plaintiff filed her Complaint.   Nor is there any evidence that the USTA's in-house attorneys advised its own employees to segregate such material for the lawyers' eventual review.   *See Zubulake*, 229 F.R.D. at 432.   The USTA failed to submit any such evidence even when given the opportunity to defend itself against this motion for sanctions. The USTA's silence is deafening.

Instead, in their opposition, the Defendants curiously attempt to focus this Court's attention on the "voluminous relevant evidence and cooperation" the Plaintiff has allegedly received from the Defendants.   (*See* Def. Memo of Law at 1, 15.)   The Defendants even had the temerity to complain that their own experienced legal team was too busy in the Fall of 2015

to review limited security camera footage from a portion of Arthur Ashe Stadium on the night of Plaintiff's accident.   (*See* Def. Memo of Law at 15.)   When, in fact, this would have been eminently reasonable, and, was actually required.   Defendants' counsel's suggestions that it needed to review security footage from the USTA's entire facility is preposterous.   Instead, rather than review and preserve the potentially relevant video evidence, the USTA took the liberty of deleting all additional security footage from the night of Ms. Bouchard's accident.

The instant motion for sanctions is not about what evidence the Plaintiff did receive, but rather, about the highly relevant evidence she did not.   Because USTA personnel admittedly deleted all additional security camera footage from the night of the accident, Ms. Bouchard was denied access to crucial evidence to which she was entitled.   The sanction of an adverse inference is the only remedy which can adequately restore her to the position she would have been in absent the wrongful destruction of evidence by the USTA.

### 1.   The USTA had a Legal Obligation to Preserve All Potentially Relevant Evidence Regardless of Whether the Plaintiff Ever Sent a Preservation Letter.

Defendants argue that the language in Plaintiff's preservation letter which requests security footage of the locker room and surrounding areas would not encompass the additional footage in the player hallway or areas outside the media rooms.   This is absurd, as these areas are in immediate proximity and even share the same hallway.   Regardless, Defendants' feeble attempt to excuse its obligation to preserve evidence by distinguishing the language in Plaintiff's preservation letter is irrelevant.   Defendants' preservation obligations arose less than twenty-four hours after the accident, when its in-house counsel began its investigation.

Plaintiff's preservation letter to Defendants went above-and-beyond what the law requires.   *See e.g., Williams v. N.Y. City Transit Auth.*, No. 10 CV 0882 ENV, 2011 WL

8

5024280, at *5 (E.D.N.Y. Oct. 19, 2011) (in addition to EEOC notification of obligation to preserve, plaintiff's counsel sent a preservation letter notifying defendants that they had a duty to preserve electronically stored information; defendants were therefore clearly put on notice that they had a duty to preserve evidence related to plaintiff's case).   Moreover, the Defendants were definitely on notice of litigation at the time the Plaintiff filed her Complaint, which was months before all the additional security camera footage had been destroyed pursuant to the USTA's routine data destruction policy.   Accordingly, Defendant's argument should be dismissed.

> **2.   The Timing of Plaintiff's Discovery Requests are Irrelevant Because the USTA Conceded that it Destroyed All Additional Security Camera Footage 160 Days after Plaintiff's Accident.**

In its Opposition, the USTA half-heartedly attempts to blame Ms. Bouchard for the destruction of the security camera footage by claiming the evidence was destroyed because she did not make a demand for such evidence early enough in the litigation.   However, not only is the USTA's argument misguided, but the USTA's attempt to blame Ms. Bouchard just further evidences the USTA's pattern of failing to take responsibility for their own actions.

Once a party and its counsel "have identified *all* sources of *potentially relevant* information," they are under a duty to "retain that information [] and to produce information responsive to the opposing party's requests."   *Zubulake*, 229 F.R.D. at 433 (emphasis added). "The *continuing* duty to supplement disclosures strongly suggests that parties also have a duty to make sure that discoverable information is not lost.   Indeed, the notion of a 'duty to preserve' connotes an ongoing obligation.   Obviously, if information is lost or destroyed, it has not been preserved."   *Zubulake*, 229 F.R.D. at 433 (emphasis in original).

Here, although the Defendants produced three hours of video footage from a single security camera as part of their Rule 26 Initial Disclosures, the Defendants were under an

9

ongoing and continuing obligation to identify all additional sources of potentially relevant information and make sure such discoverable information was not lost.   *See Zubulake*, 229 F.R.D. at 433.   The USTA clearly failed to do so. The timing of Plaintiff's discovery requests is nothing more than another red herring argument put forth by the Defendants in an effort to blame Ms. Bouchard for their own failures.   Such an argument should be disregarded in its entirety.

### B.  The Security Footage Was Intentionally Destroyed and Therefore its Relevance Should Be Presumed.

The overwhelming evidence in this case establishes that the USTA acted willfully when it deleted the relevant security camera footage – resulting in a complete loss of relevant evidence. As a result, this satisfies the mental culpability prong of the adverse inference test and also demonstrates that the deleted material was relevant to the Plaintiff's case.

Relevance may be presumed when a party intentionally destroys materials without attempting to preserve the relevant information.   *See Dataflow, Inc. v. Peerless Ins. Co.*, No. 3:11-CV-1127 LEK/DEP, 2013 WL 6992130, at *8 (N.D.N.Y. June 6, 2013), *report and recommendation adopted in part,* No. 3:11-CV-1127 LEK/DEP, 2014 WL 148685 (N.D.N.Y. Jan. 13, 2014).   "In this respect, 'relevance' means relevance for purposes of discovery, which is '*an extremely broad concept*.'"   *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) (emphasis added)); *see also Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014) (a party is well-advised to retain all relevant documents in existence at the time the duty to preserve attaches).   "When evidence is destroyed willfully, the destruction alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party."   *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 504

10

(S.D.N.Y. 2013) (internal quotations omitted); *Zubulake*, 229 F.R.D. at 431 (in the case of

willful spoliation the degree of culpability gives rise to a presumption of the relevance of the

documents destroyed).    "[T]he intentional destruction of relevant records, either paper or

electronic, after the duty to preserve has attached, is willful."    *Pension Committee of University

of Montreal Pension Plan*, 685 F. Supp. 2d at 465.

### 1.  The USTA's Pattern of Deceptive Conduct is Sufficient Circumstantial Evidence to Prove Intent.

The circumstantial evidence in this case screams of Defendants' intent.    Defendants'

pattern of deceptive conduct since the inception of this litigation supports Plaintiff's allegations

that the Defendants intentionally destroyed the missing security camera footage.    Instead of

taking the routine precaution of instituting a "litigation hold," the Defendants knowingly

discarded all additional security camera footage from the night of Plaintiff's accident.    The

relevance of this evidence must be presumed because all additional security camera footage was

destroyed after the duty to preserve had attached and, now, by Defendants' own admission, the

evidence cannot be restored or replaced through additional discovery.

The Defendants' complete failure to take the most basic preservation steps, even after

conducting their own internal investigation, receiving Plaintiff's preservation letter, and

unilaterally producing the only security camera footage they felt was favorable to their case,

provides the basis for the sanction of an adverse inference under Fed. R. Civ. P. 37(e).    In

addition to the willful destruction of all security camera footage, the Defendants, to this day,

have utterly failed to identify which of their three employees applied the slippery cleaning

substance that caused Ms. Bouchard's accident, despite being in a perfect position to do so.

Moreover, the Defendants concealed the applicable insurance coverage despite being required to

disclose it in their automatic initial disclosures.

Taken as a whole, this is clear and convincing evidence that the Defendants destroyed the relevant security camera footage to gain an advantage in the litigation.    The evidence is largely circumstantial.   "But circumstantial evidence may be accorded equal weight with direct evidence, and standing alone may be sufficient to support even a determination that requires proof beyond a reasonable doubt."   *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (citations omitted).    Defendants, in their opposition, don't deny this conduct, but rather characterize it is "erroneous and irrelevant."    As is clear from the case law, their pattern and practice of repeated, intentional discovery abuses to gain an advantage is highly relevant for purposes of Plaintiff's instant motion.    Without the opportunity to question the USTA regarding the specific circumstances surrounding the destruction of the security camera footage, Plaintiff must rely on this strong circumstantial evidence to prove intent.    Further, Defendants have utterly failed to rebut Plaintiff's evidence of intent by failing to squarely address the circumstances surrounding the destruction of the security video.    The only reasonable conclusion that can be drawn from the circumstances herein is that the security footage in question was destroyed intentionally.

### 2.  The USTA Unilaterally Decided What Evidence it Deemed Relevant and Willfully Destroyed All Evidence it Deemed Irrelevant or Harmful.

Defendants' conduct in selectively preserving only the security camera footage it deemed relevant is also strong evidence of intent.    Plaintiff had a right to see what those destroyed videos from the night of the accident depicted.    "While a litigant is under no duty to keep or retain every document in its possession[,] it is under a duty to preserve what it knows, *or reasonably should know, is relevant in the action, is reasonably calculated to lead to the*

*discovery of admissible evidence, is reasonably likely to be requested during discovery* and/or is

the subject of a pending discovery request." *Zubulake*, 220 F.R.D. at 217 (emphasis added)

(internal quotations omitted); *see also Essenter v. Cumberland Farms, Inc.*, No. 1:09-CV-0539

LEK DRH, 2011 WL 124505, at *7 (N.D.N.Y. Jan. 14, 2011) ("no doubt that a *video depicting*

*the time before, during, and after an incident is relevant* to determine what actually happened at

the moment the injury occurred.")   Defendants acknowledge in their Opposition that the tape

they provided was relevant, but provided no reasoning for why tapes they destroyed were not.

   Defendants want us to "take their word for it" that the video footage was irrelevant.

However, nothing that has occurred during this entire litigation would afford them that benefit of

the doubt.   Whether it be the USTA destroying security camera footage, failing to identify the

locker room attendant who cleaned the floor, or failing to disclose all applicable insurance

coverage, the USTA's pattern of deceptive conduct proves that the Plaintiff cannot trust the

USTA to unilaterally determine what evidence is relevant.[2]

   For example, Defendants were obligated to provide Plaintiff with all applicable insurance

information in their Rule 26 Initial Disclosures.   They failed to do so for more than eighteen

months, and only provided full disclosure of the coverage after Plaintiff's repeated inquiries.   In

Defendants' Opposition, they have the audacity to *blame the Plaintiff* for failing to inquire earlier

whether there was additional insurance coverage.   This is not Plaintiff's obligation, but rather,

---

2  In fact, the USTA's opposition is doomed by major contradictions.   One the one hand, when it benefits its own
argument, the USTA claims it is entitled to play the role of judge and jury and concludes that "the only security
video camera footage that could possibly be related to Plaintiff's accident inside the locker room was the one
directly *outside* the women's locker room door."   (Def. Memo of Law at 7.)   However, the USTA directly
contradicts itself by stating that "[w]hether the evidence at issue was ever relevant or was destroyed with a culpable
state of mind are questions for a jury to be resolved at trial."   (Def. Memo of Law at 1.)   The USTA cannot have it
both ways.   The USTA unilaterally decided what evidence was relevant and then intentionally destroyed all
additional security camera footage.   The law required the Defendants to preserve all potentially relevant evidence
and they plainly failed to do so.

the Defendants' obligation.    Had Plaintiffs merely "taken Defendants' word for it" regarding

the amount of insurance coverage, Plaintiff would still be in the dark.    Only through Plaintiff's

continued diligence in prosecuting this case has she uncovered truths and information either not

provided by Defendants or provided inaccurately.

  In Plaintiff's Third Rule 34 Request for Production of Documents, Plaintiff specifically

requested additional security camera footage from the night of Ms. Bouchard's accident,

including (i) footage capturing the area outside the interview rooms where Ms. Bouchard gave

her press conference, and (ii) *an additional hour of footage from the same security camera*

*outside the women's locker room from which the Defendants did provide video footage*.    In

Defendants' response, they inexplicably stated that no further footage existed because

"[p]ursuant to Defendants' policy, security footage is only available within 160 days of the

recording.    *No further footage from 2015 exists beyond what was already provided by*

*Defendants*."    (Morelli Decl., Ex. H at 4.)

  In its Opposition, the Defendants strategically mince words in an attempt to backtrack

from their previous statements.    Now, the Defendants bizarrely attempt to argue that "[u]nder

no fair reading of the law or Plaintiff's [preservation letter] could it be said that Defendants had

an obligation to preserve security camera footage from…any location other than the areas *inside*

and/or *immediately outside* the women's locker room."    (Def. Memo of Law at 13.)

Defendants go even further and state that it would have been "completely unreasonable" for

them to have preserved additional video footage from the night of Plaintiff's accident.    (*Id.*)

Not only are Defendants completely and utterly wrong on the law, but their characterization of

the facts and Plaintiff's discovery demands is disingenuous at best.    Further, it completely

14

shirks the spirit of discovery in litigation.

First, the Defendants admit in their Opposition that multiple security cameras, from which the video footage was willfully destroyed, were located just down the same hallway and within a mere 66 or 120 feet of the women's locker room.   (Def. Memo of Law at 11.)   For the USTA to argue that these additional cameras – which are located in the very same hallway and in close proximity to the women's locker room – are somehow not "surrounding" the women's locker room defies logic.[3]   Second, the Defendants neglect to address the fact that the Plaintiff requested an additional hour of footage from the only security camera outside the women's locker room that the Defendants had deemed relevant and actually produced.   (*See,* Morelli Decl., Ex. H at 4 ¶ 8.)   This additional hour of footage potentially would have verified which locker room attendants were on duty that evening along with the times they each left work. Due to the Defendants' willful destruction of this video footage from an admittedly relevant source, Plaintiff is unable to verify this information and was deprived of the opportunity to see everything else the footage may have shown.

Third, in their Opposition, Defendants submit the Affidavit of Michael Rodriguez in an attempt to diminish the relevance of the security camera footage they destroyed.   (Def. Memo of Law, Ex. 5.)   The affidavit discusses the general camera positions of various areas within

---

3 It should be noted that any arguments by the Defendants' that the Plaintiff ever asked for all camera footage from all cameras at the facility to be preserved is, as the Defendants aptly put it, plainly ridiculous.   The Plaintiff included a copy of the Arthur Ashe Stadium Map depicting the only location at the National Tennis Center relevant to Plaintiff's accident.   (Morelli Decl. Ex. L.)   It must also be noted that this map was provided by the Defendants in their Rule 26 Initial Disclosures, so, presumably, Defendants have been aware which areas were relevant to the Plaintiff's case since the inception of this litigation.   To ask the USTA to have preserved security camera footage from one stadium from one night would have been a reasonable request and, in fact, required by the law.   The USTA failed to do so.

Arthur Ashe stadium along with what is generally captured by each camera.[4]   For example, the

USTA admits that: (1) about 66 feet Northeast of the women's locker room, also on the first

floor, there is a security camera located within a vestibule that contains the player transportation

desk; (2) there are two cameras inside the players' Fitness Center, but the USTA is allegedly

uncertain whether they operational during the 2015 U.S. Open; (3) about 120 feet from the

women's locker room, also on the first floor, there is a security camera which admittedly

captures pedestrian activity in the hallway; and (4) there is also a security camera near the door

to the USTA administrative offices which are located just down the hall from the women's

locker room.   The footage from each one of these cameras was destroyed by the USTA and not

produced during discovery in direct violation of the Defendants legal obligation to preserve all

potentially relevant evidence.   The Plaintiff has already testified she was personally in these

various areas both immediately before and after her accident.   At a minimum, this security

footage was relevant to corroborate the timeline of events both before and after the accident.

Conspicuously, the USTA also states, for the first time in its Opposition, that there are

"no security cameras located outside the interview rooms."   (Def. Memo of Law at 13; Ex. 5 ¶

10.)   Yet, previously, in response to Plaintiff's request for any security video capturing the area

outside the interview/media rooms, the Defendants stated such footage had been destroyed

pursuant to Defendants' standard 160 day data retention policy.   (*See* Morelli Decl., Ex. H.)   If

no security cameras capturing the area outside the interview rooms had ever existed, the

Defendants could have stated such a fact, as they clearly did in response to other discovery

---

4  The affidavit is not made by a person with specific knowledge of what the cameras actually depicted on the night
of Plaintiff's accident, nor have the Defendants provided evidence from any person with knowledge who may have
reviewed the security tapes from the night of Plaintiff's accident.

requests for security footage.     (Morelli Decl., Ex. H ¶ 10.)     Unfortunately, based on
Defendants' conduct throughout this litigation, Plaintiff cannot take the Defendants at their word
– nor should she have to.     The USTA was required to institute a "litigation hold" and preserve
all potentially relevant security camera footage throughout the course of this litigation, regardless
of when, or if, the Plaintiff requested the relevant evidence.

### C.  The Missing Security Camera Footage Would Have Been Relevant and Favorable to Plaintiff's Claims.

Even if the Court finds that the overwhelming circumstantial evidence in this case does
not prove intent, Plaintiff has proven that the missing evidence would have been relevant and
favorable to her claims.     In this case, it is clear that videos showing the time before and after the
incident are relevant to determine what led to the accident and capturing the critical timeline in
and around the accident.   *See Essenter*, 2011 WL 124505, at *5, *7 (granting motion for
adverse inference instruction related to surveillance footage, and explaining plaintiff offered
sufficient extrinsic evidence footage would have been favorable in the form of testimony from
witnesses).   Additionally, "[c]ourts must take care not to hold [ ] the prejudiced party to too
strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,
because doing so would subvert the ... purposes of the adverse inference, and would allow parties
who have ... destroyed evidence to profit from that destruction."   *Residential Funding Corp. v.
DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (internal quotations omitted).

The Plaintiff has provided extrinsic evidence that tends to prove the destroyed evidence
would be relevant and favorable to her claims.     The Plaintiff has been unable to confront
witnesses, such as Eva Scheumann, regarding their accounts of the night's events and unable to
definitively establish a critical timeline of the events leading up to Ms. Bouchard's accident.

17

For example, Ms. Scheumann allegedly looked for Ms. Bouchard in the fitness center, the players' lounge, and in the area around the three interview/press conference rooms.   (Morelli Decl., Ex. G, 45:1-25.)   Further, despite testifying that she believed Ms. Bouchard had left for the evening, Ms. Scheumann admitted that she sent Ms. Bouchard an email stating that all the trainers had left for the evening, but noted that they would return if Ms. Bouchard needed any additionally treatment, including taking an ice bath.   (Ex. G, 62:21-63:9, 67:17-68:11, 115:10-25.)   This is clear evidence that she knew Ms. Bouchard was still at the National Tennis Center, and that she was not being truthful with at least some of her claims.   The destroyed video evidence would be decisive in determining the veracity of parts of Ms. Scheumann's testimony, and the timeline of events that evening.   However, Plaintiff is unable to verify or disprove Ms. Scheumann's claims because the USTA intentionally destroyed relevant security camera footage that cannot be restored or replaced.   This extrinsic evidence tends to show that the destroyed video would have been favorable to the Plaintiff, and was thus relevant to her claims.

The case of *Lacey v. Target Corp.*, No. 13 CV 4098 RML, 2015 WL 2254968, at *1 (E.D.N.Y. May 13, 2015) (an unreported decision), principally relied on by the Defendants, is easily distinguishable.   Specifically, in *Lacey*, 2015 WL 2254968, unlike in the case at hand, the defendant had preserved and produced "a videotape of the exact moment when plaintiff slipped." *Id.* at *6.   In contrast, here, it is undisputed that there is no actual video footage of Plaintiff's accident, thus making the destroyed security camera footage infinitely more important.

### D.  Plaintiff has been Prejudiced by Defendants' Destruction of Evidence.

Despite the Defendants' arguments to the contrary, Ms. Bouchard has been extremely prejudiced by the Defendants' destruction of the highly relevant security camera footage. Although the Defendants now admit that Ms. Bouchard's account of the events outside the

18

women's locker room are *not* in dispute (Def. Memo of Law at 21)[5], unfortunately, the accounts of other witnesses, such as Ms. Scheumann are in dispute.   As a direct result of Defendants' willful destruction of all additional security camera footage, the Plaintiff is prejudiced because she is unable to corroborate the accounts of events from these additional witnesses. Defendants' argument that the "comings and goings" of witnesses who left the locker room are somehow fully captured by the single security camera focused directly on the door of the locker room is completely disingenuous and misses the point entirely.   As an example, no footage of Eva Scheumann looking for Ms. Bouchard outside the interview rooms was captured in the video provided.   Although we may know what time she left and returned, Plaintiff has absolutely no idea what Ms. Scheumann did, or did not do, why allegedly looking for Ms. Bouchard.

The Defendants also state that Plaintiff has not been prejudiced because the information about the process of cleaning the floor has been provided through the deposition testimony of the locker room attendants.   (Def. Memo of Law at 22.)   This is false.   First, the Defendants' fail to mention that the USTA still has not identified which of its own employees actually cleaned the floor on the night of the accident.   Second, the USTA ignores the fact that the deposition testimony of the USTA-employed locker room attendants is completely contradictory regarding who cleaned the floor.   During the deposition of supervisor Karen Owens, while under oath, Ms. Owens unequivocally identified Christina Simmons as the locker room attendant who applied the slippery cleaning substance to the floor of the trainer's room on the night of Ms. Bouchard's accident.   (Morelli Decl., Ex. C, 23:7-9, 40:22-41:5.)   Yet, to Plaintiff's surprise,

---

5  It is worth noting that this is the first time during this litigation that the Defendants' have stated that Ms. Bouchard's account of events are not in dispute.   Even now, Defendants will only concede that Ms. Bouchard's account of events *outside* the locker room are not in dispute.   Tellingly, the Defendants have only made this concession when it is to their benefit in an attempt to avoid sanctions for their willful conduct.

Christina Simmons testified under oath that she *never* cleaned any floors during the entire 2015 U.S. Open.   (Morelli Decl., Ex. K, 17:21-25.)   In fact, according to Christina Simmons, USTA employee Karen Owens lied under oath.[6]   (Ex. K, 31:23-33:2.)

Lastly, the Plaintiff has been prejudiced as a direct result of the Defendants' so-called "investigation" into the happening of this accident and the failure of the USTA to be forthcoming with the results of that investigation.   Defendants' choice to cherry-pick what information to obtain during their investigation, such as interviewing Ms. Bouchard's car service driver, while omitting interviewing two of the three locker room attendants present at the time of her accident, frustrated Plaintiff's ability to get to the truth of the matter.   The Defendants' conduct has been designed to intentionally frustrate the Plaintiff at every turn.   Defendants' pattern of violating their legal obligations has culminated in their willful destruction of relevant evidence that cannot be restored or replaced, all to Plaintiff's detriment.

### E.  The Sanction of an Adverse Jury Instruction is Warranted for Defendants' Willful Destruction of the Security Camera Footage.

Under either Rule 37(e) or this Court's inherent authority, an adverse inference is the appropriate remedy in this case.   Plaintiff has demonstrated that: (1) Defendants were obligated to preserve the security camera footage; (2) intentionally destroyed the evidence; and (3) the missing security camera footage is relevant and cannot be restored or replaced.   An adverse inference instruction is the only sanction that could possibly restore Ms. Bouchard to the same position she would have been in absent the destruction of the security camera footage.

---

6  Karen Owens is the only witness to contradict Ms. Bouchard's sworn testimony that there was absolutely no caution sign in place after the floor was cleaned.   However, as shown above, the truthfulness of Karen Owens' testimony has already been directly contradicted by a former USTA employee on a central issue.   Therefore, the truthfulness of *all* of Karen Owens' testimony must be called into question.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her

motion, pursuant to Fed. R. Civ. P. 37 and this Court's inherent authority, for sanctions due to

Defendants' spoliation of evidence in its entirety.

Dated: New York, New York
        June 7, 2017

MORELLI LAW FIRM, PLLC

By:

Benedict P. Morelli
EDNY Bar No.: BM6597
bmorelli@morellilaw.com
David T. Sirotkin
EDNY Bar No.: DS4863
dsirotkin@morellilaw.com
Perry S. Fallick
EDNY Bar No.: PF1165
pfallick@morellilaw.com
777 Third Avenue, 31st Floor
New York, New York 10017
Tel: (212) 751-9800
Fax: (212) 751-0046

*Attorneys for Plaintiff Eugenie Bouchard*

TO:   **WILSON, ELSER, MOSKOWITZ,**
      **EDELMAN & DICKER LLP**
      Rosario M. Vignali, Esq.
      1133 Westchester Avenue
      White Plains, New York 10604
      (914) 872-7250

      *Attorneys for Defendants*

21