

Francis P. Manchisi
(direct) 914 872-7228
Francis.Manchisi@wilsonelser.com

Rosario M. Vignali
(direct) 914 872-7250
Rosario.Vignali@wilsonelser.com

July 14, 2017

**VIA ECF**

Judge Ann Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Eugenie Bouchard v. United States Tennis Association, et al.
                Civ. Case No.: 1:15-cv-5920

Dear Judge Donnelly:

This office represents the Defendants in the above-referenced matter.

Pursuant to Magistrate Judge Bloom's Scheduling Order of May 4, 2017, Defendants hereby seek leave to file a Motion for Partial Summary Judgment and, accordingly, hereby respectfully request that a pre-motion conference be convened for that purpose.

In accordance with Your Honor's Individual Rules, Defendants annex hereto their Local Civil Rule 56.1 Statement ("Statement"). [Defendants will not file the supporting exhibits to their Statement at this time, but will postpone such filing until submission of their Memorandum of Law.] Also, in accordance with Your Honor's Individual Rules, Defendants set forth the bases for their anticipated Motion for Summary Judgment below.

Defendants anticipate seeking summary judgment on: 1) Plaintiff's claim for punitive damages on the ground that Plaintiff has not discovered, and cannot set forth at trial, any evidence that would warrant the imposition of punitive damages, including malicious or reckless conduct on the part of Defendants; and 2) that portion of Plaintiff's Complaint that seeks compensatory damages for Plaintiff's claim of lost income based on her alleged loss of existing or future endorsement contracts and/or marketing ventures, inasmuch as such claim is unsupported by any evidence in the record, was refuted by the testimony in this case, and would therefore be based on speculation and conjecture.

**Punitive Damages**

In her Complaint (Doc. 1), Plaintiff seeks recovery of punitive damages against Defendants. It is well-settled that "punitive damages are available for the purpose of vindicating a public right only

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Baltimore • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Virginia • Washington, DC • West Palm Beach • White Plains

wilsonelser.com

6596176v.1

where the actions of the alleged tort-feasor constitute gross recklessness or intentional, wanton or malicious conduct aimed at the public generally or are activated by evil or reprehensible motives" *Spinosa v. Weinstein*, 168 A.D.2d 32, 42-43 (2d Dept. May 31, 1991) *quoting Walker v. Sheldon*, 10 N.Y.2d 401 (1961). Punitive damages "are not intended to compensate the injured party but to punish the tort-feasor for his conduct and to deter him and others like him from similar action in the future." *Sharapata v. Islip*, 56 N.Y.2d 332, 335 (1982) *quoting Restatement (Second) of Torts* § 908. The mere commission of a tort is not sufficient to justify an award of punitive damages; rather "[t]here must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Prozeralik v. Capital Cities Communs.*, 82 N.Y.2d 466, 479 (1993) *quoting* Prosser and Keeton, Torts §2, at 9-10 [5th ed. 1984]; *see also Home Ins. Co. v. American Home Products Corp.*, 75 N.Y.2d 196, 200 (1990). "Even where there is gross negligence, punitive damages are awarded only in 'singularly rare cases' such as cases involving an improper state of mind or malice or cases involving wrongdoing to the public." *Bothmer v. Schooler, Weinstein, Minsky & Lester, P.C.*, 698 N.Y.S.2d 486, 487 (1st Dept. 1999) (*Karen S. "Anonymous" v. Streitferdt*, 568 N.Y.S.2d 946, 946, *quoting Rand & Paseka Mfg. Co. v. Holmes Protection*, 130 A.D.2d 429, 431, *lv. denied* 70 N.Y.2d 615.)

In the instant case, there is no basis for punitive damages. Plaintiff has not set forth a scintilla of evidence establishing that Defendants acted with evil motive towards Plaintiff or with a reckless disregard for the safety of others. To the contrary, the evidence produced during discovery has unquestionably established that Plaintiff's fall happened after a solution was placed on the physiotherapy room floor during a cleaning operation. The condition did not result from any "evil motive" or "reckless disregard" on the part of the Defendants, but simply as a result of (at worst and without any concession from the Defendants) simple and ordinary negligence.

As stated in Defendants' Statement, annexed hereto, there is undisputed evidence that: 1) there were twilight lighting in the physiotherapy room so that, even when the lights were turned off, that room was not completely dark; 2) there were signs in the women's locker room, which Plaintiff testified to having seen, pertaining to training room hours and the timeframe within which an ice bath was beneficial; and 3) Plaintiff underwent a WTA tutorial which included site treatment hours at tournaments. There is other evidence on the record suggestive that the Plaintiff was well-aware of the procedures and protocol within the women's locker room as to its operating hours and access to the physiotherapy room area. Thus, there is no evidence whatsoever in the record showing even a hint of malicious conduct on Defendants' part. For these reasons, which will be further elaborated in their Memorandum of Law, Defendants request the Court's Leave to seek summary judgment on Plaintiff's claim for punitive damages.

## Compensatory Damages for Lost Income Based on Loss of Existing or Future Endorsements

In her Complaint (*Doc. 1*), Plaintiff seeks recovery of "actual" and "compensatory" damages. Furthermore in discovery, Plaintiff affirmed that she is seeking "lost income" resulting from the accident and "future lost income" from potential endorsements and/or marketing ventures which, according to Plaintiff, she could have and/or would have obtained had the accident not happened. Defendants will seek summary judgment on Plaintiff's claim for lost income, profits and wages from *existing* endorsements or contracts, in that there is undisputed evidence that Plaintiff suffered no economic loss from the endorsements that pre-dated the accident. Defendants will further seek summary judgment on Plaintiff's claim for *future* lost income, profits and wages stemming from *future* contracts or endorsements that Plaintiff could have allegedly attained had the accident not

WILSON ELSER

- 3 -

happened, in that such claim for damages is wholly and unreasonably speculative in nature.

Existing Endorsements and/or Marketing Ventures

Plaintiff has set forth no evidence that she actually lost money from existing endorsements as a result of the accident. As outlined in Defendants' Statement, Plaintiff, her mother (Julie LeClair) and her agent (Jill Smoller), all testified that, after the accident, Plaintiff was paid all monies owed to her under the existing endorsements and marketing ventures and that no company, with which she had a endorsement contract in place at the time of her accident, cancelled, terminated, voided or threatened to cancel, terminate or void any existing endorsement contract or marketing venture as a result of the accident. Thus, the evidence shows that Plaintiff suffered no actual past loss of income or profits as a result of the accident. For these reasons, Defendants request the Court's Leave to seek summary judgment on Plaintiff's claim for lost income, wages, etc. related to her existing endorsements and marketing ventures.

Future Endorsement Contracts and Marketing Ventures

The Restatement (Second) of Torts §903, defines "compensatory damages" as "damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." In New York, "[u]nder general tort principles, compensatory damages are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed." *See Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 42 (2d Cir. Oct. 19, 2015) (citations omitted). Therefore, "[b]ecause compensatory damages are 'intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct,' courts will not permit recovery when the connection between the claimed loss and the tortious act is speculative or uncertain." *Id.* at 43, *citing Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001); *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ("the plaintiff bears the burden of showing that the claimed damages are the "certain result of the wrong"); *see also Nwanze v. Time, Inc.*, 125 Fed. Appx. 346, 348 (2d Cir. 2005) ("New York does not permit [plaintiff] to claim actual damages for the loss of speculative, expected proceeds. Rather, he may claim actual damages only for his 'out-of-pocket' expenses); *see also Lama Holding Co. v. Smith Barney, Inc.*, 646 N.Y.S.2d 76 (1996) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."); *see also Jackson v. Chetram*, 751 N.Y.S.2d 551 (2d Dept. 2002) (lower court properly set aside the award for future loss of earnings as plaintiffs' expert's calculation was based on the speculative premise that the infant would have reached a certain level of education).

As stated in Defendants' Statement, Plaintiff's expert opined as to Plaintiff's potential future loss of endorsements "to a reasonable degree of probability." Notwithstanding her expert's claim, Plaintiff has not produced no evidence whatsoever indicating that, had the accident not happened, she would have, to a reasonable degree of certainty, secured certain endorsement contracts and/or marketing ventures in the future; nor can she establish to any reasonable degree of certainty that opportunities for such endorsement contracts and/or marketing ventures have been foreclosed to the Plaintiff for any reason related to her accident. As a matter of fact, the evidence shows that, even after the accident, some existing endorsements were renewed and Plaintiff entered into a new contract with Colgate. Thus, Plaintiff claim for lost income and other damages based on the alleged loss of potential future endorsements and marketing ventures cannot survive as this claim is based purely on speculation and conjecture. For these reasons, and as will be further elaborated in their


Memorandum of Law, Defendants request the Court's Leave to seek summary judgment on that portion of Plaintiff's Complaint seeking compensatory damages for loss of income based on potential future endorsements contracts and marketing ventures.

It is respectfully submitted that Defendants will provide additional factual references and law in the Memorandum of Law submitted in support of their motion.

We look forward to the opportunity to speak to Your Honor regarding Defendants' request at the Court's earliest convenience.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Francis P. Manchisi

Rosario M. Vignali

Enclosure

cc: Morelli Law Firm (via ECF)