IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIE BOUCHARD ) | Docket No. 1:15-cv-5920 |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| UNITED STATES TENNIS ASSOCIATION, ) | |
| INC. and USTA NATIONAL TENNIS CENTER, ) | |
| INC. ) | |
| Defendants. ) | |
| _____ ) | |

**LOCAL CIVIL RULE 56.1 STATEMENT IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1, Defendants, UNITED STATES TENNIS ASSOCIATION INCORPORATED and USTA NATIONAL TENNIS CENTER INCORPORATED, incorrectly named herein as "UNITED STATES TENNIS ASSOCIATION, INC. and USTA NATIONAL TENNIS CENTER, INC.," (hereinafter collectively referred to as "Defendants"), by and through their attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, set forth the following statement of material facts:

1. Plaintiff claims to have been injured on September 4, 2015 when she slipped and fell in the physiotherapy room of the women's locker room of the USTA National Tennis Center. *See Complaint*, Exhibit "A", p. 1 ¶1.

2. As a result of the accident, Plaintiff is claiming actual, compensatory and punitive damages. *See Complaint*, Exhibit "A", p. 9, "Wherefore Clause".

3. Plaintiff is also claiming past lost income and loss of future income. *See Plaintiff's Responses to First Set of Interrogatories*, Exhibit "B", p. 9, Responses to Interrogatory Nos. 19, 20.

1

4. Plaintiff commenced the within action with this Honorable Court on October 14, 2015. *See Complaint*, Exhibit "A".

5. Defendants timely filed their Answer asserting general denials of liability and raising all proper affirmative defenses on November 13, 2015. *See Defendant's Answer,* Exhibit "C".

6. On the night of the accident, Plaintiff had finished her doubles match at approximately 9:45 p.m. *See Plaintiff's Deposition Transcript,* Exhibit "D", 60:19-22.

7. Plaintiff then entered the women's locker room at approximately 10:05 p.m. *See Plaintiff's Deposition Transcript,* Exhibit "D", 61-62:19.

8. Plaintiff subsequently exited the women's locker room at approximately 10:23 p.m. *See Plaintiff's Deposition Transcript,* Exhibit "D", 70:13-72:5.

9. The locker room attendants had to wait until the all the trainers and players have left for the evening before cleaning the floor in the trainers'/physiotherapy room. *See Excerpts from Karen Owens' Deposition Transcript,* Exhibit "L", 33:6-15; *see Excerpts from Sandra Benavides' Deposition Transcript,* Exhibit "M", 44:11-17, 45:16-17; *see Excerpts from Christina Simmons' Deposition Transcript,* Exhibit "N", 25:2-10.

10. On the night of the accident, Plaintiff re-entered the locker room at approximately 11:10 p.m. *See Plaintiff's Deposition Transcript,* Exhibit "D", 78:5-79:4.

11. At that time, Plaintiff re-entered the physiotherapy room of the women's locker room for the purpose of using the ice bath therein. *See Plaintiff's Responses to First Set of Interrogatories*, Exhibit "B", p. 5, Response to Interrogatory No. 9; *see Plaintiff's Deposition Transcript,* Exhibit "D", 77:24-78:4.

12. Even when the lights are turned off, "twilight" lighting remains in the physiotherapy room to partially illuminate the room. *See Defendant's Answer,* Exhibit "C", Eighth Affirmative Defense. *See Excerpts from Karen Owens' Deposition Transcript,* Exhibit "L", 67:7-14.

13. Plaintiff has conceded that, on the night of the accident, there may have been dim lights in the physiotherapy room. *See Plaintiff's Deposition Transcript,* Exhibit "D", 83:14-24.

14. At the time of the 2015 US Open, Plaintiff recalled seeing a sign titled "2015 US Open Training Room Hours" posted within the women's locker room, including the training room and/or ice bath area. *See Plaintiff's Deposition Transcript,* Exhibit "D", 58:9-22; *see "2015 US Open Training Room Hours",* Exhibit "E".

15. The "2015 US Open Training Room Hours" sign provides that treatment would be available "One (1) hour before start of matches and until the end of play." *See "2015 US Open Training Room Hours",* Exhibit "E".

16. As part of her player development process with the Women's Tennis Association ("WTA"), Plaintiff underwent an online tutorial offered by the WTA to players around the year 2013. *See Plaintiff's Deposition Transcript,* Exhibit "D", 40:13-42:13.

17. As part of that tutorial, Plaintiff had to answer questions and, as a result, passed the tutorial. *See Plaintiff's Deposition Transcript,* Exhibit "D", 42:20-25.

18. Plaintiff recalled seeing that portion of the online tutorial, pertaining to site treatment hours at tournaments, which provided that such treatment would be available for one hour before the start of the first match until one hour after the end of play for the day. *See Plaintiff's Deposition Transcript,* Exhibit "D", 43:9-24.

19. Plaintiff recalled seeing a sign titled "Discover the Power of Cool" posted somewhere in the women's locker room during the 2015 US Open. *See Plaintiff's Deposition Transcript,* Exhibit "D", 58:23-59:15; *see "Discover the Power of Cool"*, Exhibit "F".

20. "Discover the Power of Cool" provides that ice baths for post-play recovery be taken "[w]ithin 1 hour of activity." *See Discover the Power of Cool*, Exhibit "F".

21. With respect to their access to trainer's services, players are told that they have such access one hour before a match play starts and one hour after a match play ends. *See Excerpts from Kristy Stahr's Deposition*, Exhibit "G", 26:9-15

22. Right after the accident, Plaintiff advised the locker room attendant of her fall and the locker room attendant pointed out to Plaintiff that Plaintiff was not supposed to be in the physiotherapy room. *See Plaintiff's Deposition Transcript,* Exhibit "D", 92:19-25.

23. As of the day of the accident, Plaintiff was endorsed by the following companies: 1) Nike; 2) Babolat; 3) Rolex; 4) Coca-Cola; 5) Usana Health Sciences; 6) Pinty's Delicious Foods, Inc.; 7) Unique Sports Products, Inc.; 8) Apple, Inc.; 9) Aviva Canada; 10) Rogers Communications Partnership. *See Plaintiff's Responses to First Set of Interrogatories*, Exhibit "B", p. 10, Response to Interrogatory No. 22; *see Plaintiff's Deposition Transcript,* Exhibit "D", 186:7-187:12; *see Julie LeClair's Deposition Transcript,* Exhibit "H", 88:7-89:25.

24. Plaintiff testified that she was able to fulfill her obligations on all those contracts up to the present time. *See Plaintiff's Deposition Transcript,* Exhibit "D", 188-12:19.

25. Plaintiff testified that, to her knowledge, none of those companies voided, canceled or terminated any of those contracts before their stated end date. *See Plaintiff's Deposition Transcript,* Exhibit "D", 188-20:189-4.

26. Plaintiff testified that none of those companies threatened to terminate, void or cancel those contracts before their stated end date. *See Plaintiff's Deposition Transcript,* Exhibit "D", 189:5-9.

27. Plaintiff testified that, to her knowledge, those companies paid her all the money that they were obligated to pay her under those contracts up to the present time. *See Plaintiff's Deposition Transcript,* Exhibit "D", 189:17-22.

28. None of those companies refused to pay Plaintiff any money under the contracts up to the present time. *See Plaintiff's Deposition Transcript,* Exhibit "D", 189:23-190:3.

29. Plaintiff testified that, to her knowledge, the financial benefit, pay, remuneration, or money that she lost under those contracts as a result of the accident consisted of "only *potential* bonuses." *See Plaintiff's Deposition Transcript,* Exhibit "D", 190:4-11 (emphasis added).

30. Not all of those contracts had a provision pertaining to potential bonuses. *See Plaintiff's Deposition Transcript,* Exhibit "D", 190:18-23.

31. Some of those contracts were renewed since the time of the accident, such as the Usana Health Sciences, Rogers Communications, Babolat and Pinty's Delicious Foods contracts. *See Plaintiff's Deposition Transcript,* Exhibit "D", 191-192.

32. Since the day of the accident, Plaintiff entered into new endorsement arrangements with Colgate. *See Plaintiff's Deposition Transcript,* Exhibit "D", 194:25-195:10.

33. To Plaintiff's knowledge, there were no companies that refused to discuss an endorsement deal with her because of the accident. *See Plaintiff's Deposition Transcript,* Exhibit "D", 196:17-21.

34. Plaintiff's mother, Julie LeClair, confirmed during deposition that none of Plaintiff's endorsement deals were voided or cancelled by any of those companies at any time after the 2015 U.S. Open. *See Julie LeClair's Deposition Transcript,* Exhibit "H", 91:7-12.

35. Ms. LeClair confirmed that Plaintiff fulfilled all her obligations under those contracts up to the present. *See Julie LeClair's Deposition Transcript,* Exhibit "H", 91:18-22.

36. To Ms. LeClair's knowledge, Plaintiff has been paid all the monies that she was entitled to receive under those contracts. *See Julie LeClair's Deposition Transcript,* Exhibit "H", 91:23-92:2.

37. It was Ms. LeClair's understanding that, other than for missing a bonus under a contract related at the U.S. Open or any other Grand Slam, Plaintiff was paid everything that she was entitled to receive under those contracts. *See Julie LeClair's Deposition Transcript,* Exhibit "H", 92:13-21.

38. Ms. LeClair confirmed that after the 2015 U.S. Open, Plaintiff entered into a deal with Colgate. *See Julie LeClair's Deposition Transcript,* Exhibit "H", 99:21-23.

39. At the time of the accident, Plaintiff's agent was Jill Smoller with WME/IMG. *See Plaintiff's Deposition Transcript,* Exhibit "D", 116:25-117:3, 173:23.

40. Ms. Smoller confirmed during her deposition that: a) to her knowledge Nike has not terminated the contract with Ms. Bouchard; b) Nike has paid the annual base compensation to Ms. Bouchard for the first and second years of the contract; c) Nike has not refused to pay any of the monies owed to Ms. Bouchard under the agreement; and d) Nike never represented that, as a result of the accident, they were going to terminate the agreement. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 79:13-15, 81:23-82:13.

6592824v.1

41. Ms. Smoller confirmed during her deposition that: a) to her knowledge Rolex paid Plaintiff the money that she was owed under the contract; b) Rolex did not void that contract; c) Rolex did not threaten to cancel the contract as a result of the accident; c) Rolex did not refuse to pay any of the monies owed to Plaintiff under the contract; and d) Plaintiff did not incur any reductions of the consideration under the contract as a result of the accident. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 93:5-18; 95:5-11; 96:5-19.

42. Ms. Smoller confirmed during her deposition that: a) to her knowledge Plaintiff received the annual compensation under the Coca-Cola agreement; b) she could not point to any money that Plaintiff would have been due under the contract but that, as a result of the accident, did not receive. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 96:20-25; 98:17-20; 99:14-18.

43. As to the Usana agreement, Ms. Smoller confirmed during her deposition that to her knowledge Plaintiff received payment as stated in that contract. *See Excerpt from Jill Smoller's Deposition Transcript*, Exhibit "I",100:25-101:8; 103:12-25.

44. As to the Pinty Foods contract, Ms. Smoller confirmed during her deposition that, to her knowledge, Plaintiff received the compensation she was owed under the contract. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I",104:21-106:7.

45. As to the Unique Sports contract, Ms. Smoller confirmed that, to her knowledge, Unique Sports Products did not nullify the agreement as a result of the accident. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 108:6:17; 110:8-11.

46. As to the Apple Beats contract, Ms. Smoller further testified that: a) to her knowledge, Plaintiff was paid the money that she was owed for the first year of the contract; and b)

Apple has not refused to pay Plaintiff any money due under the contract as a result of the accident. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 111-112; 114:2-6.

47. With respect to the Aviva Canada contract, Ms. Smoller confirmed that: a) up to the time of Ms. Smoller's deposition, Plaintiff was paid the money that she was owed under the contract; b) Aviva did not void or nullify the agreement as a result of the accident; and c) Aviva did not fail to pay any financial obligations that they had under the agreement. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 114-117:7; 118:11-119:3.

48. As to the Rogers Communications contract, Ms. Smoller testified that: a) Plaintiff was paid the annual base compensation owed her under this agreement; and b) there were no money due Plaintiff under the agreement that she did not receive as a result of the accident. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 120:6-11; 121:17-122-8.

49. As to the Tennis Canada Agreement, Ms. Smoller testified that: a) Plaintiff was paid for the public service announcement and for participation in one Fed Cup, and the Rogers Cup; and b) there was no compensation under the contract that Plaintiff was not paid as a result of the accident. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 122:9-125:4.

50. Ms. Smoller renegotiated the terms for the Babolat and Rogers contracts. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 139:20-25.

51. Ms. Smoller negotiated the Colgate endorsement, which Plaintiff received after her accident. *See Excerpts from Jill Smoller's Deposition Transcript*, Exhibit "I", 144:20-23.

52. After the accident, Plaintiff entered into agreements relating to tennis tournaments during the 2016-2017 season with or for 2016 Citi Open, Generali Ladies Linz 2016, Ankara, Turkey tennis exhibition, and the 2017 Apia International Sydney. *See Plaintiff's Responses to Defendants' Second Request for Production*, Exhibit "J", p. 4, Response to Request No. 6.


53. Plaintiff's expert, Richard (Rick) Burton, submitted an expert report dated December 23, 2016. *See Report of Rick Burton*, Exhibit "K".

54. Mr. Burton opined that "to a reasonable degree of probability, that the accident and resulting injuries cost Ms. Bouchard millions of dollars in future endorsements and licensing opportunities." *See Report of Rick Burton*, Exhibit "K", p. 6.

Dated: White Plains, New York
July 14, 2017

Respectfully Submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _____S/_____
Marianna Codispoti (MC1995)
Rosario M. Vignali, Esq. (RMV7150)
Francis P. Manchisi, Esq. (FPM2943)
Attorneys for Defendants
United States Tennis Association Incorporated
and USTA National Tennis Center Incorporated
1133 Westchester Avenue
White Plains, New York 10604
Tel. (914) 872-7250
Fax (914) 323-7001

TO: Benedict P. Morelli, Esq. (BM6597)
David T. Sirotkin, Esq. (DS4863)
Perry S. Fallick (PF1165)
Attorneys for Plaintiff
Eugenie Bouchard
**Morelli Law Firm, PLLC**
777 Third Avenue, 31st Floor
New York, New York 10017
Tel: (212) 751-9800
Fax: (212) 751-0046