```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
EUGENIE BOUCHARD,

                        Plaintiff,              MEMORANDUM & ORDER
                                                  15 CV 5920 (AMD)(LB)
        -against-

UNITED STATES TENNIS ASSOCIATION, INC.,
and USTA NATIONAL TENNIS CENTER, INC.,

                        Defendants.
-------------------------------------------------------------------X
```
**BLOOM, United States Magistrate Judge:**

Plaintiff, Eugenie Bouchard, moves this Court under Federal Rule of Civil Procedure 37 for spoliation sanctions against defendants United States Tennis Association ("USTA") and USTA National Tennis Center, Inc. (ECF No. 25.) Plaintiff maintains that defendants destroyed security camera recordings from the night of the underlying incident in violation of the preservation letter plaintiff timely served. Specifically, plaintiff seeks "(1) an adverse inference jury instruction against defendants for intentionally depriving the plaintiff of evidence that would have been favorable to plaintiff and adverse to the interest of defendants; (2) punitive monetary sanction; (3) and an assessment against defendants for the costs and fees incurred by plaintiff on this motion; and (4) such other relief as this Court deems just and proper." Id. For the following reasons, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

### I.    Statement of Facts

On September 4, 2015, plaintiff competed in the 2015 U.S. Open at the United States Tennis Association ("USTA") National Tennis Center in Flushing, New York. (ECF No. 1.) At approximately 10:05 p.m., after plaintiff's last match of the evening, she returned to the women's

1

locker room. (Plaintiff's Deposition Transcript ("Bouchard") 63:4-7.) Plaintiff took a shower, and spoke to Women's Tennis Association ("WTA") trainer Kristy Stahr. (Bouchard 67:11-17.) When asked whether she needed the assistance of one of the WTA trainers, plaintiff told Ms. Stahr that she was going to the fitness room to complete her cooldown exercises and then to the media rooms to complete her post-match press conference before returning to the player treatment room[1] to use one of the ice baths. (Bouchard 68:4-69:2.) Plaintiff did as she said, first completing twenty minutes of cooldown exercises in the third floor fitness room and then going to a media room for her post-match press conference. At approximately 11:10 p.m., plaintiff returned to the women's locker room. (Bouchard 78:14-79:4; ECF No. 26-13.)

Only the locker room attendants were present when plaintiff returned to the locker room. (Bouchard 80:8-81:2.) The security camera recordings turned over to plaintiff's counsel shows the three WTA trainers leaving the women's locker room at 11:05 p.m. (ECF No. 26-13.) Stahr testified that the player treatment room floor had not been cleaned prior to the trainers leaving for the evening. (Stahr 140:11-15.) USTA locker room attendant supervisor, Karen Owens, testified that the locker room and player treatment room floors are not cleaned until all of the players and trainers are gone for the evening. (Owens 21:13-22:8.) Ms. Owens further testified that, as supervisor, she decides when it is time to clean the floor based on when the trainers leave for the evening as the trainers are not supposed to leave until after all of the players have left. (Owens 21:13-22:8; 37:9-22.) Using an internal door between the women's locker room and the player treatment room, plaintiff entered the player treatment room to take an ice bath. (Bouchard 83:2-13.) Plaintiff took three steps into the player treatment room and slipped on a cleaning substance

---

[1] The parties refer to the room where the incident occurred as both the "physiotherapy room" and the "trainer's room." Plaintiff includes a map of the USTA National Tennis Center facility where the incident occurred, which describes the room in question as the "player treatment" room. I refer to the room accordingly.

that the locker room attendants had placed on the floor. Plaintiff fell and hit her head on the tile floor. (Bouchard 85:14-23; 87:13-17.)

## II. Procedural History

Plaintiff commenced this diversity action on October 14, 2015, alleging that defendants' negligence and failure to warn caused her fall on the night of September 4, 2017, and subsequent injuries. (ECF No. 1.) The Court held an initial conference on December 15, 2015, at which time discovery deadlines were set including a January 16, 2017 deadline for expert discovery.[2] Plaintiff requested two extensions of the discovery deadlines, which were granted, ultimately extending fact discovery until January 30, 2017 and expert discovery until February 23, 2017. (ECF Nos. 16, 21.) On November 23, 2016, the case was reassigned to me for all pre-trial supervision. The Court held a status conference on January 11, 2017, at which time the parties reported that they would engage in a second round of private mediation. (January 11, 2017 Scheduling Order.) The parties' second private mediation session took place on March 29, 2017, but it did not resolve this matter. During a March 30, 2017 telephone conference, the parties requested a third extension of the discovery deadlines because their efforts to resolve this matter delayed discovery. I granted the parties until June 30, 2017 to complete all expert discovery. (March 30, 2017 Scheduling Order.) On April 7, 2017, plaintiff's counsel wrote to the Court to request a pre-motion conference on her anticipated motion for sanctions. (ECF No. 22.) The Court held a series of telephone conferences and set a briefing schedule for plaintiff's motion for sanctions. Plaintiff filed the instant motion on May 16, 2017 (ECF Nos. 25, 26), defendant responded on May 30, 2017 (ECF Nos. 27, 28), and plaintiff filed a reply in support of the motion on June 7, 2017 (ECF No. 29). On June 13, 2017,

---

[2] The case was originally assigned to the Honorable Marilyn D. Go, U.S.M.J.

defendants requested a three week extension of the expert discovery deadline, which the Court granted. (ECF No. 31.) Discovery is now closed.

### III. Plaintiff's Motion for Spoliation Sanctions

Plaintiff filed the instant motion for sanctions against defendants based on three alleged discovery violations. Plaintiff alleges that "Defendants have: (1) intentionally deprived Plaintiff of highly relevant security camera footage from the night of the Plaintiff's accident; (2) failed to disclose the USTA locker room attendant who actually applied the cleaning substance to the floor on the night of Plaintiff's accident; and (3) concealed the applicable insurance coverage despite being required to disclose it in their automatic initial disclosures." (Plaintiff's Motion for Sanctions, ECF No. 25-1 ("Sanctions Motion"), Pg. 2.)

On September 5, 2015, the USTA conducted an internal investigation into the circumstances of plaintiff's accident. Plaintiff's counsel also acted quickly[3] and sent defendants a letter within two weeks of plaintiff's accident to "preserve all evidence relating to this incident, including, but not limited to, any security camera recordings of the locker room and surrounding areas." (September 16, 2015 Preservation Letter ("preservation letter"), ECF No. 26-5.) The preservation letter further directed defendants to "cease all routine data destruction policies in place." Id. In their initial disclosures produced to plaintiff on December 21, 2015, defendants included three hours of recorded video covering the relevant timeframe that was taken from the security camera in the hallway directly facing the women's locker room door. To maintain the players' privacy, there are no security cameras inside of the women's locker room or the player

---

[3] Both parties' submissions suggest that the speed with which the other party acted is indicative of their adversary's bad faith. The Court refuses to get into the mud with counsel. The parties to this action should know better and should certainly behave better. Conducting an investigation immediately after an accident occurs and serving a preservation letter within two weeks simply demonstrates diligence. Counsel for both sides demean these proceedings by focusing on each other instead of focusing on resolving their clients' dispute.

4

treatment room where the alleged accident took place. With the exception of the video produced to plaintiff's counsel in December 2015, all other video recordings taken by security cameras on the National Tennis Center's premises on September 4, 2015 were destroyed on February 11, 2016, 160 days after the date in question in accordance with defendants' routine data destruction policy. (Defendants' Responses to Plaintiff's Third Rule 34 Request ¶¶ 8, 9.)

In the eighteen months since discovery commenced, plaintiff has deposed a number of individuals who worked at the National Tennis Center on the night of her accident, including three WTA trainers Kristy Stahr, Elaine Brady, and Eva Scheumman, and three locker room attendants Karen Owens, Sandra Benavides, and Christina Simmons. From those depositions, plaintiff learned that the locker room attendants do not clean the locker rooms and player treatment room until after the WTA trainers leave for the night. WTA trainer Scheumman testified that on the night in question, she and the other trainers were waiting in the women's locker room for plaintiff to return from her cooldown and press conference. (Scheumman's Deposition Transcript ("Scheumman") 32:7-18.) After waiting approximately one hour, Ms. Scheumman went to look for plaintiff. (Scheumman 44:10-25.) Unable to confirm plaintiff's whereabouts, Ms. Scheumman returned to the women's locker room and the WTA trainers decided to leave. (Scheumman 45-48.) Ms. Scheumman emailed plaintiff at 11:08 p.m. to tell her the trainers were leaving and that if plaintiff needed anything she could contact Ms. Scheumman and the trainers would return. (Scheumman 62:21-63:9.) After the trainers left, the locker room attendants began cleaning the locker room and player treatment room. Plaintiff returned to the locker room within minutes of Scheumman's email and fell on a cleaning substance as she entered the player treatment room.

Plaintiff states that it was not until Ms. Scheumman's deposition that she realized other security camera video may exist that would be "extremely relevant to substantiating a critical

5

timeline and supporting plaintiff's claims in this action." (Sanctions Motion, Pg. 12.) On November 23, 2016, plaintiff served a third Rule 34 Request for Production of Documents on defendants requesting video capturing the outside of the women's locker room from 12:00 a.m. – 1:00 a.m. on September 5, 2015, and any video from inside the media room where plaintiff gave her press conference between 10:00 p.m. and 12:00 a.m. on September 4, 2015. (ECF No. 26-8, ¶¶ 8, 9.) Defendants responded on December 21, 2016, stating that no responsive video exists as all security camera video is only "available within 160 days of the recording." Id. Defendants had already produced the three-hour video recorded by the security camera outside the women's locker room in their initial disclosures. All security camera video recordings in the National Tennis Center on September 4, 2015, with the exception of the three-hours that defendants produced in their initial disclosures, were destroyed in accordance with defendants' internal data destruction policies. Plaintiff seeks video recordings from security cameras that trace Ms. Scheumman's steps when she testified that she went looking for plaintiff shortly before the accident on the basis that this video is critical to "verify any of Ms. Scheumman's claims." Plaintiff maintains that defendants should be sanctioned as they destroyed video recordings in violation of plaintiff's preservation letter.

Furthermore, plaintiff argues that defendants' destruction of the video recordings, taken in context with the other alleged omissions, was clearly done with an intent to deprive plaintiff of relevant evidence. In addition to destroying all video not produced in their initial disclosures, plaintiff alleges that defendants (1) withheld disclosure of the full amount defendants' insurance policy until after the second round of mediation in March 2017, almost eighteen months after plaintiff commenced this action, and (2) withheld critical information regarding which of the three locker room attendants working the night of plaintiff's accident placed the cleaning substance on

6

the floor on which plaintiff slipped. Plaintiff argues that defendants have intentionally withheld critical information throughout the discovery process that has prejudiced plaintiff. Plaintiff urges the Court to view defendants' destruction of the remaining video in the context of defendants' other discovery failures.

Plaintiff seeks an adverse inference jury instruction that reads, "Defendants intentionally deleted security camera video recordings that would have been harmful to the Defendants and favorable to the Plaintiff." (ECF NO. 25-1, Pg. 3.) In addition, plaintiff seeks punitive damages, costs and fees related to this motion, as well as any other relief the Court deems just and proper.

## STANDARD OF REVIEW

The Court may impose sanctions under Rule 37(b) for a party's failure to comply with discovery orders. Fed. R. Civ. P. 37(b). However, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106 (2d Cir. 2002) (citing DLC Mgt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d Cir. 1998)). "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses... and for the spoliation of evidence." Reilly v. Natwest Mkts Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999).

Prior to 2015, the law uniformly required that "[a] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp., 306 F.3d at 107 (internal quotation marks and

citation omitted), superseded in part by Fed. R. Civ. P. 37(e) (2015). "As of December 1, 2015, the new Fed. R. Civ. P. 37(e) governs a party's failure to preserve electronically stored information." Best Payphones, Inc. v. City of N.Y., No. 01-CV-3924 (JG)(VMS), 2016 WL 792396, at *3 (E.D.N.Y Feb. 26, 2016)(court may issue an adverse inference instruction with regard to tangible evidence on a finding of negligence, but may not issue an adverse inference with regard to electronic evidence without finding intent to deprive); See also Mazzei v. The Money Store, 656 Fed. Appx. 558 (2d Cir. 2016) (summary order). Under the amended Rule 37(e), a court may only issue an adverse inference after finding that a party acted with intent to deprive another party of the use of electronic information in litigation. Fed. R. Civ. P. 37(e)(2). Whereas, if no intent to deprive is found, but the moving party was prejudiced by the destruction, a court may impose less severe sanctions that place the prejudiced party in the position that it would have been in had the destruction not occurred. Fed. R. Civ. P. 37(e)(1).[4]

Rule 37(e) governs the imposition of spoliation sanctions for failure to preserve electronically stored information ("ESI") in actions that were filed on or after December 1, 2015, and any action pending as of December 1, 2015 "insofar as just and practicable." See CAT3, LLC v. Black Lineage, Inc., 164 F.Supp.3d 488, 495-496 (S.D.N.Y. 2016). Thus, the Court should apply the new rule to cases that were pending on December 1, 2015, unless application of the new rule would be unjust or impracticable. The amended rule "places no greater substantive obligation on

---

[4] Rule 37(e) of the Federal Rules of Civil Procedure that went into effect on December 1, 2015, reads: "**Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of the litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
  (1) Upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
  (2) Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
     (A) Presume that the lost information was unfavorable to the party;
     (B) Instruct the jury that it may or must presume the information was unfavorable to the party; or
     (C) Dismiss the action or enter a default judgment.

the party preserving ESI" and is "in some respects more lenient as to the sanctions that can be imposed for violation of the preservation obligation." Id. at 496. Furthermore, "since the amendment does not establish a new rule of conduct, either version of the rule could apply. However, both the Supreme Court's order and the governing statute create a presumption that a new rule governs pending proceedings unless its application would be unjust or impracticable." Id. (citation omitted).

The Court must first determine whether to apply the old or new rule. Before December 1, 2015, Rule 37(e) read, "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good faith operation of an electronic information system." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. In Residential Funding Corp., the Second Circuit held that a Court could, under Rule 37(b)(2), impose sanctions for simply *negligent* destruction of ESI, where a party was obligated to preserve electronic information and failed to do so. 306 F.3d at 108. Under the amended rule, a court may only impose severe sanctions such as an adverse inference or dismissal where the Court finds that the non-moving party acted with the "intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). In the advisory committee's notes to the 2015 amendment, the committee cautions, "[t]he better rule for the negligent or grossly negligent loss of [ESI] is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction." Id. Thus, the amended rule differentiates between loss and destruction caused by the "failure to take reasonable steps to preserve it," and that which is caused by "the intent to deprive another party of the information's use," and ascribes remedies accordingly. Id.

9

Irrespective of the rule change, defendants have been on notice since September 16, 2015 of their obligation to preserve video of the "locker room and surrounding areas." (ECF No. 26-5); See CAT3, LLC, 164 F.Supp.3d at 496 (recognizing that the new rule recognizes the "duty to preserve information arises when litigation is reasonably anticipated") (internal citations omitted); See also Arista Records, LLC v. Usenet.com, Inc., 608 F.Supp.2d 409, 433 (S.D.N.Y. 2009) (finding that under the previous iteration of the rule, a preservation letter placed defendants on notice of their obligation to preserve relevant evidence). Thus, application of the amended rule does not change defendants' obligation to preserve the video plaintiff sought. Moreover, application of the amended rule is neither unjust nor impracticable as the amended rule provides remedies for both negligent destruction and intentional destruction. Therefore, I consider plaintiff's motion under amended Rule 37(e). See CAT3, LLC, 164 F.Supp.3d at 496 (finding that Rule 37(e) in its current form applies where the non-moving party is not subjected to a "greater substantive burden" and the moving party is not stripped of an equally effective remedy, as was available under the prior iteration of the rule).

## DISCUSSION

### I. Security Camera Recordings

Defendants produced three hours of video that recorded the area immediately outside of the women's locker room in their initial disclosures on December 21, 2015, approximately three months after the incident. There is no video recording of plaintiff's accident. Plaintiff alleges that she fell inside the player treatment room where there are no security cameras. (Affidavit of Michael Rodriguez ("Rodriguez Affidavit"), ¶ 3.) Thus, defendants are not accused of destroying video that would show one of defendants' employees applying the cleaning substance on which plaintiff slipped or plaintiff's actual slip and fall. See Best Payphones, No. 01-CV-3924 (JG)(VMS), 2016

WL 792396, at *6 (E.D.N.Y. Feb. 26, 2016) ("It is not enough for the innocent party to show that the destroyed evidence would have been responsive to a document request. The innocent party must also show that the evidence would have been helpful in proving its claims or defenses – i.e. that the innocent party is prejudiced without that evidence. Proof of relevance does not necessarily equal proof of prejudice.") (quoting Pension Comm. Of University of Montreal Pension Plan v. Banc of America Securities, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010) (abrogated on other grounds)). Given where the accident occurred and the facts as alleged in the complaint, it is entirely reasonable that defendants believed that their production fully complied with their obligations under plaintiff's preservation letter.

Prior to the December 2015 amendment, the party seeking spoliation sanctions was required to establish the "elements of a spoliation claim by a preponderance of the evidence." McIntosh v. United States, No. 14 Civ. 7889 (KMK), 2016 WL 1274585, at *33 (S.D.N.Y. March 31, 2016) (quoting Dilworth v. Goldberg, 3 F.Supp.3d 198, 200 (S.D.N.Y. 2014) (internal citations omitted)). At least one court has considered that the heightened standard of "intent" required under the amended Rule 37(e) warrants requiring the moving party to prove by clear and convincing evidence that the non-moving party intended to deprive the moving party of the destroyed information. CAT3, LLC, 164 F.Supp.3d at 499. The Court need not delve further into the appropriate standard of proof, as plaintiff fails to establish a spoliation claim under either standard.

The record does not support plaintiff's allegation that defendants acted with an intent to deprive plaintiff of information when they destroyed video from the other security cameras on the premises in accordance with their internal data destruction policies. Defendants did not destroy all video immediately following the accident, nor did they turn over the three hours from the camera outside the women's locker room and suddenly destroy all other video from September 4, 2015.

Defendants destroyed the remaining security camera video on the date set by their routine data destruction policy. Plaintiff fails to establish that defendants acted with an intent to deprive plaintiff of video from the other security cameras on the premises. As such, plaintiff's motion for an adverse inference instruction pursuant to Rule 37(e) is denied. Fed. R. Civ. P. 37(e)(2).

Because I do not find that defendants violated their obligations under the preservation letter, plaintiff cannot establish that the videos' destruction was unreasonable. Defendants' reading of the scope of the preservation letter was reasonable given the facts alleged in the complaint and the notice defendants had received up until the time the video recordings were destroyed. Defendants complied with plaintiff's preservation letter when they turned over the video recordings from outside the women's locker room without delay. Because the accident happened inside the player treatment room where no camera exists, the "surrounding areas" would be the area immediately outside the locker room. Upon review of the map of the National Tennis Center provided by plaintiff, it was not unreasonable for defendants to destroy video recordings of the third floor fitness center or the media rooms. These locations are not within the "surrounding areas" of the women's locker room.

Even assuming, *arguendo*, that defendants failed to "take reasonable steps" to preserve the remaining video recordings, I find that plaintiff is not prejudiced by the destruction. See Fed. R. Civ. P. 37(e)(1). Plaintiff states that the destroyed video would have helped to establish a critical timeline leading up to the accident and an opportunity to confront Ms. Scheumman regarding her deposition testimony. Attached to plaintiff's motion are still photographs of the video recordings produced in defendants' initial disclosures. (ECF No. 26-13.) The photographs are timestamped and show different individuals, including plaintiff, and locker room attendants and WTA trainers, *including Ms. Scheumman*, entering and exiting the women's locker room. Plaintiff may not have

an exact timeline of when Ms. Scheumman says she stood outside of the fitness room or media rooms to look for plaintiff, but plaintiff clearly has an exact timeline of when she and the other trainers entered and exited the women's locker room. Moreover, plaintiff does not need the video of the fitness center or media rooms to counter Ms. Scheumman's deposition testimony, as Ms. Scheumman's testimony appears to support plaintiff's position. According to plaintiff, the WTA trainers were not to leave the locker room until plaintiff had returned. It is undisputed that the WTA trainers left before plaintiff returned to the locker room on the night in question. (ECF No. 26-13.) On these facts, I cannot find that the lack of video recordings from the areas outside of the third floor fitness room or the media rooms prejudices plaintiff's case.

Finally, because the video recordings from the other security cameras on the premises were not destroyed until 160 days (on or around February 11, 2016) after the incident, in accordance with defendants' destruction policy, plaintiff's counsel could have reviewed the three-hour video that was produced and requested additional video if plaintiff believed that it was within the scope of the preservation letter. See McIntosh v. United States, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *32 (S.D.N.Y. Mar. 31, 2016) ("Plaintiff would have to show that Defendants had 'notice that the [tapes] were relevant to litigation' before [the destruction] date.") (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). While counsel may not have deposed Ms. Scheumman before the other video was destroyed, they did have plaintiff's timeline of events and they could have requested video from the hallways tracing plaintiff's steps between the fitness center and media rooms in the hour prior to the accident. Plaintiff requested additional video one year after discovery commenced in this case seeking to discredit Ms. Scheumman's November 30, 2016 deposition testimony. However, it is undisputed that Ms. Scheumman left the locker room

13

before plaintiff returned. Therefore, how long or how hard Ms. Scheumman looked for plaintiff before the trainers all left is hardly crucial to the case.

While the Court acknowledges that additional discovery may shed light on a matter, a party is not required to hold on to information in perpetuity on the chance it becomes relevant and is requested years later.[5] One of the reasons Rule 37(e) was amended, was to relieve the burden imposed by the prior version of the rule that "caused litigants to expend excessive effort and money on preservation in order to avoid the risk of severe sanctions if a court finds they did not do enough." See Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment. Requiring litigants to retain ESI on the chance that somewhere down the road a party may broaden the scope of a prior discovery request is the sort of burden the new rule was put in place to avoid.

Plaintiff has not established that defendants intentionally destroyed video recordings that were subject to the preservation letter or that she is prejudiced by the destruction. Therefore, plaintiff's motion for an adverse inference jury instruction is denied.

## II.    Insurance Policy

Whereas, defendants' failure to preserve all video recordings from the night in question is not a basis for sanctions, the Court finds that defendants' failure to disclose the full amount of their insurance policy until almost eighteen months after this litigation was commenced is sanctionable conduct and a violation of defendants' obligations under Rule 26. Fed R. Civ. P. 26(a)(1)(A)(iv); 26(e)(1). Under Rule 26(a)(1)(A)(iv), defendants are obligated to disclose the applicable insurance policies without prompting. Fed. R. Civ. P. 26(a)(1)(A)(iv). Rule 26(e)(1) obligates any party to

---

[5] The Court does not appreciate defendants' flippant argument that "Defendants' legal team had nothing else to do in the Fall of 2015 than to review hours upon hours of security camera video footage from the Center facility to determine which footage should be retained and which should not be retained…." (Response, Pg. 15.) To be clear, finding that defendants' reading of the scope of the preservation letter was reasonable does not relieve defendants of their discovery obligation to preserve evidence regarding an accident on their premises. Defendants' arguments about how busy they were would not save them from sanctions had they violated their discovery obligations.

14

supplement any prior responses to document requests and interrogatories that are deficient. Fed. R. Civ. P. 26(e)(1). Where a Court finds that a party failed to disclose information that should have been turned over pursuant to Rule 26(a) or 26(e), the Court may impose sanctions including the "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). "Rule 37 sanctions are intended to restore the parties to the position they would have occupied but for the breach of discovery obligations." In re September 11th Liability Insurance Coverage Cases, 243 F.R.D. 114, 132 (S.D.N.Y. 2007). Defendants purportedly turned over the information regarding the applicable insurance policies that could contribute to resolving plaintiff's claims in their initial disclosures. The parties commenced discovery, and over the next eighteen months, the parties engaged in two day-long mediation sessions with a private mediator. Plaintiff reports, and defendants do not deny, that defendants only disclosed the significantly larger insurance policies at the second private mediation on March 29, 2017, almost eighteen months after this suit was commenced. (Response Pg. 27.)

In their response, defendants maintain that their failure to turn over the applicable insurance policies was due to misinformation conveyed by the insurance carrier.[6] This is plainly unacceptable. Defendants' failure to disclose what is a routine discovery obligation frustrated the parties' opportunity to potentially resolve this case before the costs of discovery and litigation mounted. Defendants' counsel states that they was unaware that plaintiff's counsel did not know of the larger insurance policies, but upon realizing their error, defendants' counsel immediately disclosed that information to plaintiff's counsel and the mediator during the second mediation session. Given the timing of the supplemental disclosure, the Court credits that defendants' counsel was not intentionally trying to withhold the applicable policies. Nevertheless, plaintiff could not

---

[6] Like plaintiff's counsel, counsel for defendants are officers of the court and experienced personal injury litigators. Counsel is responsible for this failure.

have known what defendants' counsel did not disclose. Defendants' lack of intent does not excuse their highly unprofessional failure to disclose. Plaintiff is entitled to be returned to the position she would have been in had she received accurate information relating to defendants' insurance policies in defendants' initial disclosures. See In re September 11th Liability, 243 F.R.D. at 131-132 ("[T]he court should endeavor to impose a sanction that will restore the parties to the position they would have occupied but for the breach of discovery obligations and deter future misconduct.") (citing Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 437 (S.D.N.Y. 2004)).

Accordingly, I order defendants to pay plaintiff the costs associated with the first and second private mediation sessions. In the alternative, defendants may pay the cost of the March 29, 2017 private mediation session and, if plaintiff consents, schedule a third private mediation session for which defendants shall pay. This case has been pending almost two years. Mediation was unsuccessful in part because defendants failed to disclose the applicable insurance policies. The Court considers the defendants' failure to disclose the applicable insurance policy an unacceptable obstruction of the discovery process and a waste of judicial resources. I trust defendants will not make this mistake again; counsel shall be vigilant to confirm and disclose the correct insurance information at the outset of litigation.

### III.     Failure to Identify Locker Room Attendant that Applied Substance

Finally, the Court does not find that defendants intentionally withheld the identity of the locker room attendant that placed the cleaning substance on the floor before Ms. Bouchard fell, or that the delay in locating Ms. Simmons was caused by defendants' noncompliance with their discovery obligations. Defendants turned over the employee sign-in sheets from that evening, the names of the three locker room attendants working the night of plaintiff's accident, and their last known addresses. Plaintiff has now deposed all three locker room attendants, but all three have

testified that they were not the one to put the substance on the floor. Plaintiff argues that because defendants incorrectly identified Ms. Simmons as the employee who placed the cleaning substance on the floor that night, they willfully denied plaintiff important discovery material to which she was entitled. Defendants reached out to all three women and facilitated the scheduling of Ms. Owens and Ms. Benavides' depositions. Ms. Simmons refused to cooperate and only agreed to be deposed once subpoenaed. Defendants cannot be held responsible for an employee's initial refusal to comply. Furthermore, while the Court understands that plaintiff's counsel believes that defendants know who actually put the cleaning substance on the floor, and are refusing to disclose that information, there is nothing in the record to suggest, other than plaintiff's counsel's speculation, that defendants actually know who put the substance on the floor.

Upon review of the instant record, I do not find that defendants' engaged in any sanctionable conduct regarding disclosure of the names and addresses of the locker room attendants working that evening. It is very possible all three employees do not want to be held responsible for the incident, leading to the contradictions in their testimonies. There is no reason to believe that defendants were being disingenuous when they narrowed the possible actors down to two individuals. Defendants only have so much control over their (former) employees' truth-telling. Plaintiff has not demonstrated that defendants willfully withheld any information from plaintiff, and she ultimately was able to depose all three employees. Plaintiff can make whatever she will from the contradictions in their testimony.

## CONCLUSION

Plaintiff's motion for sanctions is granted in part and denied in part. Plaintiff's motion for sanctions related to the destruction of video recordings is denied. However, I find that defendants' failure to disclose the full amount of their insurance coverage to be a violation of defendants'

obligations and sanctionable conduct under Rules 26(a)(1)(A)(iv) and 37(c)(1) of the Federal Rules of Civil Procedure. Accordingly, I order defendants to pay plaintiff the costs related to the first and second private mediation sessions. In the alternative, defendants may pay the cost of the March 29, 2017 private mediation session and, if plaintiff consents, schedule a third mediation session for which defendants shall pay. I decline to award punitive damages. I find that with the costs of the mediations covered, and with a further opportunity for mediation with the correct policy limits disclosed, plaintiff is placed in the position she would have been in had the violation not occurred.

Within fourteen days of the date of this order, plaintiff and defendants shall notify the Court whether they will be pursuing a third private mediation. In addition, defendants shall file proof of payment of the costs of the mediations. I strongly encourage both sides to move this case forward and to fully focus their efforts on their clients' interests in reaching a just resolution.

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: August 10, 2017
       Brooklyn, New York