# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIE BOUCHARD,<br><br>      Plaintiff,<br>v.<br><br>UNITED STATES TENNIS ASSOCIATION, INC., and USTA NATIONAL TENNIS CENTER, INC.<br><br>      Defendants. | Docket No.: 1:15-cv-5920<br><br>Judge Ann M. Donnelly<br><br>**PLAINTIFF'S RULE 56.1 COUNTER-STATEMENT OF MATERIAL FACTS** |

## PLAINTIFF'S RULE 56.1 COUNTER-STATEMENT OF MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(b), Plaintiff EUGENIE BOUCHARD, by and through her attorneys MORELLI LAW FIRM, PLLC, sets forth the following Counter-Statement of material facts:

1. Admit.

2. Admit. Except with respect to Plaintiff's claim for punitive damages, which Plaintiff has now withdrawn.

3. Admit.

4. Admit.

5. Admit with respect to Defendants' timely filing of their Answer. Deny knowledge or information sufficient to state whether Defendants' raised all proper affirmative defenses.

6. Admit.

7. Admit.

1

8. Admit.

9. Admit.

10. Admit.

11. Admit with respect to the fact that Plaintiff subsequently entered the physiotherapy room of the women's locker room for the purpose of using an ice bath. Deny that Plaintiff "re-entered" the physiotherapy room. Further deny that Plaintiff entered the physiotherapy room at 11:10 p.m. Plaintiff first went to her locker to change before entering the physiotherapy room and there is no evidence of what time Plaintiff actually entered the physiotherapy room prior to her accident. *See* Plaintiff's Deposition Transcript, Exhibit "A", 81:21-82:12.

12. Deny. Plaintiff testified that the lights in the trainers' room were off. *See* Plaintiff's Deposition, Exhibit "A", 83:14-18.

13. Deny. Plaintiff testified that the lights in the trainers' room were off. *See* Plaintiff's Deposition, Exhibit "A", 83:14-18.

14. Admit only to the extent that Ms. Bouchard recalled seeing the sign. Deny to the extent that Ms. Bouchard did not recall reading the sign at any time. *See* Plaintiff's Deposition, Exhibit "A", 59:16-24.

15. Deny. The "2015 US Open Training Room Hours" sign provided that "*regular treatment hours*" were one (1) hour before the start of matches and until the end of play, but also provided that players could contact a WTA PHCP if they required care outside of these "regular treatment hours." In fact, numerous WTA trainer's testified that during the U.S. Open they were on-call 24/7 for the benefit of the players. *See e.g.,* Deposition

    Transcript of Kristy Stahr, Exhibit "B", 103:10-15, 116:9-117:10; Deposition Transcript of Eva Scheumann, Exhibit "C", 18:13-19:8.

16. Admit.

17. Admit.

18. Admit.

19. Admit only to the extent that Ms. Bouchard recalled seeing the sign. Deny to the extent that Ms. Bouchard did not recall reading the sign during the U.S. Open at any time. *See* Plaintiff's Deposition, Exhibit "A", 59:11-15.

20. Deny. Numerous WTA trainers testified that although ice baths may be more effective if taken within one hour post-activity, they were not ineffective after that time period. *See e.g.,* Deposition Transcript of Eva Scheumann, Exhibit "C", 34:3-12, 41:7-10.

21. Deny. Numerous WTA trainer's testified that during the U.S. Open they were on-call 24/7 for the benefit of the players. *See e.g.,* Deposition Transcript of Kristy Stahr, Exhibit "B", 103:10-15, 116:9-117:10; Deposition Transcript of Eva Scheumann, Exhibit "C", 18:13-19:8.

22. Deny. Plaintiff testified that she "told the attendant I just fell," and in response, the locker room attendant, in her opinion, stated "you weren't supposed to go in there." *See* Plaintiff's Deposition, Exhibit "A", 92:15-25.

23. Admit.

24. Admit.

25. Admit.

26. Admit only to the extent Plaintiff testified to this fact. Deny to the extent that Jill

3

Smoller testified that Aviva Canada expressed concerns about the terms of the existing agreement in light of Ms. Bouchard's accident and its impact on her marketability and inability to play matches in the later part of 2015. *See* Jill Smoller Deposition Transcript, Exhibit "D", 118:11-20.

27. Admit.

28. Admit to the extent that Plaintiff testified that, to her knowledge, none of those companies refused to pay her any money under the contracts up until the time of Plaintiff's deposition. *See* Plaintiff's Deposition, Exhibit "A", 189:23-190:3.

29. Admit, to the extent that Plaintiff testified that she lost potential bonuses under her existing contracts as a result of her accident at the 2015 U.S. Open. Those potential bonuses were based either on world ranking achieved or round reached at a certain tournaments as described in the individual contracts. *See* Plaintiff's Deposition, Exhibit "A", 190:4-191:7.

30. Admit.

31. Admit.

32. Admit.

33. Deny. Plaintiff testified that she was not aware of endorsement deals what were in negotiations at the time of her accident and that she is generally not made aware by her agent that deals with new companies are being negotiated until the contract is almost finalized. *See* Plaintiff's Deposition, Exhibit "A", 193:17-194:8.

34. Admit.

35. Admit.

36. Deny. Plaintiff testified that she lost potential bonuses under her existing contracts as a result of her accident at the 2015 U.S. Open. Those potential bonuses were based either on world ranking achieved or round reached at a certain tournaments as described in the individual contracts. *See* Plaintiff's Deposition, Exhibit "A", 190:4-191:7; *see also* Julie LeClair's Deposition Transcript, Exhibit "E", 92:3-12.

37. Deny. Plaintiff testified that she lost potential bonuses under her existing contracts as a result of her accident at the 2015 U.S. Open. Those potential bonuses were based either on world ranking achieved or round reached at a certain tournament as described in numerous individual contracts. These bonuses were not limited to one particular endorsement contract nor were these bonuses exclusively related to the U.S. Open or other Grand Slam. *See* Plaintiff's Deposition, Exhibit "A", 190:4-191:7; *see also* Julie LeClair's Deposition Transcript, Exhibit "E", 92:3-12.

38. Admit.

39. Admit.

40. Deny. Ms. Smoller testified that Plaintiff's Nike contract contained a minimum play requirement and that she did not know whether Ms. Bouchard satisfied the terms of the minimum play requirement included in the Nike contract. Jill Smoller Deposition Transcript, Exhibit "D", 75:17-76:21, 77:23-78:7. Ms. Smoller further testified that in years 4 and 5 of her Nike contract, Nike could reduce Plaintiff's base compensation based on reductions in her world ranking. *See* Jill Smoller Deposition Transcript, Exhibit "D", 76:22-77:16.

41. Deny. Ms. Bouchard's ability to earn Rolex contract bonuses was directly affected by

5

her accident and resulting injuries at the 2015 U.S. Open. Ms. Smoller testified that Plaintiff's Rolex contract contained bonuses, including for winning a Grand Slam tournament and for achieving certain world rankings. Jill Smoller Deposition Transcript, Exhibit "D", 95:12-96:4.

42. Deny. Ms. Smoller specifically testified that she did not know, and could not answer, whether Ms. Bouchard did not receive any money she was owed under her Coca-Cola contract as a result of the accident. Jill Smoller Deposition Transcript, Exhibit "D", 99:8-13.

43. Admit.

44. Deny. Ms. Smoller testified that she did not know whether there was any compensation Ms. Bouchard was owed under this agreement that she did not receive as a result of the accident. Jill Smoller Deposition Transcript, Exhibit "D", 107:12-19.

45. Admit only to the extent that Unique Sports Products did not nullify the agreement as a result of the accident. Deny to the extent that the Unique Sports Product contract contained "Remuneration Royalties" in the form of Year End Rankings bonuses which were directly affected by Ms. Bouchard's accident and resulting injuries at the 2015 U.S. Open. Jill Smoller Deposition Transcript, Exhibit "D", 109:10-110:7.

46. Deny. Ms. Bouchard's ability to earn Apple/Beats contract bonuses was directly affected by her accident and resulting injuries at the 2015 U.S. Open. Ms. Smoller testified that Plaintiff's Apple/Beats contract contained certain performance bonuses. Jill Smoller Deposition Transcript, Exhibit "D", 113:7-25.

47. Deny. Plaintiff's contract with Aviva contains fourth and fifth year options, at the

6

company's option to renew. It is unknown at this time whether Aviva will exercise its option to renew the fourth and/or fifth years of Plaintiff's contract, or, instead will void or nullify this agreement as a result of the accident.

48. Deny. Ms. Smoller testified that she did not have knowledge whether there was any money due to Plaintiff under the agreement that she did not receive as a result of the accident. Jill Smoller Deposition Transcript, Exhibit "D", 121:24-122:3.

49. Deny. Ms. Bouchard's ability to earn Tennis Canada ranking bonuses was directly affected by her accident and resulting injuries at the 2015 U.S. Open. Ms. Smoller testified that there were bonuses in Plaintiff's Tennis Canada agreement depending what Ms. Bouchard's ranking was at the time. Jill Smoller Deposition Transcript, Exhibit "D", 123:21-124:10.

50. Admit.

51. Admit only to the extent that Ms. Smoller started negotiations on the Colgate agreement. Deny to the extent that Ms. Smoller testified she stopped working for Plaintiff prior to the conclusion of negotiations. Jill Smoller Deposition Transcript, Exhibit "D", 144:20-145:11.

52. Admit.

53. Admit.

54. Admit. Mr. Burton further opined that Plaintiff's injuries prevented her "from capitalizing on a rare opportunity to gain invaluable exposure and future earnings via the world's most popular Grand Slam tennis tournament and leveraging her success, physical appearance and general marketability to gain lucrative endorsement contracts, speaking

7

engagements, tournament appearance fees and potential licensing arrangements, among other financial opportunities. *See* Expert Report of Rick Burton, Exhibit "F", p.2. Mr. Burton further opined that Plaintiff's "injuries also caused her to withdraw from multiple additional 2015 tournaments and subsequently left her unable to financially capitalize on her tennis performances, photogenic appearance and logical fit as an endorser for numerous lucrative consumer product categories." *Id.* Mr. Burton based his expert opinion on, *inter alia*, Ms. Bouchard's existing endorsement contracts, comparable endorsement income for other top female athletes, and Ms. Bouchard's extraordinary on and off-court success and marketability up to and at the time of the 2015 U.S. Open. *Id.* at 12-13.

Dated: New York, New York
August 18, 2017

                                      **MORELLI LAW FIRM, PLLC**

                                By:  /s/ *Benedict P. Morelli*_____
                                    Benedict P. Morelli
                                    EDNY Bar No.: BM6597
                                    bmorelli@morellilaw.com
                                    David T. Sirotkin
                                    EDNY Bar No.: DS4863
                                    dsirotkin@morellilaw.com
                                    Perry S. Fallick
                                    EDNY Bar No.: PF1165
                                    pfallick@morellilaw.com
                                    777 Third Avenue, 31st Floor
                                    New York, New York 10017
                                    Tel: (212) 751-9800
                                    Fax: (212) 751-0046

                                    *Attorneys for Plaintiff Eugenie Bouchard*

TO: **WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
Rosario M. Vignali, Esq.
1133 Westchester Avenue
White Plains, New York 10604
(914) 872-7250

*Attorneys for Defendants*