IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIE BOUCHARD,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES TENNIS ASSOCIATION, INC., and USTA NATIONAL TENNIS CENTER, INC.,<br><br>        Defendants. | Civil Action No.:<br>15-cv-5920 (AMD)(LB) |

**PLAINTIFF EUGENIE BOUCHARD'S OBJECTIONS
TO MAGISTRATE JUDGE'S MEMORANDUM & ORDER**

Pursuant to Federal Rule of Civil Procedure 72, Plaintiff Eugenie Bouchard respectfully submits the within Objections to the Magistrate Judge's Report and Recommendation filed on August 10, 2017.   [Doc. 34].

**PRELIMINARY STATEMENT**

In the Memorandum & Order, the Magistrate Judge properly concluded that Defendants failure to disclose the full amount of their insurance coverage was a violation of Defendants' obligations and sanctionable conduct under Rules 26(a)(1)(A)(iv) and 37(c)(1) of the Federal Rules of Civil Procedure.  However, Plaintiff respectfully submits that the Magistrate Judge erred in finding that the record does not support Plaintiff's allegation that Defendants acted with an intent to deprive Plaintiff of information when they destroyed video from the other security cameras on the premises in accordance with their internal data destruction policies.  Moreover, Plaintiff respectfully submits that the Magistrate Judge erred in finding that the Defendants did not violate their obligations under the law or Plaintiff's preservation letter, and, therefore, Plaintiff cannot establish that Defendants' destruction of the security videos was unreasonable.

1

Lastly, Plaintiff respectfully submits that the Magistrate Judge erred in finding that Plaintiff was not prejudiced by the destruction of the security videos. For the reasons set forth herein, Plaintiff respectfully requests that the Court overrule those portions of the Memorandum & Order and award Plaintiff: (1) an adverse inference jury instruction in favor of Plaintiff and against Defendants for intentionally depriving Plaintiff of relevant security video evidence; (2) punitive monetary sanctions; (3) an assessment against Defendants for the costs and fees incurred by Plaintiff on this motion; and/or (4) such other relief as this Court deems just and proper.

## LEGAL ARGUMENTS

**I.  Despite Undisputedly Being on Notice of Upcoming Litigation, Defendants Unilaterally Destroyed All Additional Security Camera Videos from the Night of Plaintiff's Accident, in Violation of the Well-Established Law as well as Plaintiff's Preservation Letter, and Plaintiff was Severely Prejudiced as a Direct Result.**

As the Magistrate Judge correctly concluded, "defendants have been on notice since September 16, 2015 of their obligation to preserve video of the 'locker room and surrounding areas.'" [Doc. 34 at 10]. The Magistrate Judge further correctly concluded that the Defendants had an "obligation to preserve the video plaintiff sought" pursuant to Rule 37(e). [Doc. 34 at 10]. The Magistrate Judge also correctly found that "Defendants destroyed the remaining security camera video on the date set by their routine data destruction policy." [Doc. 34 at 11]. Despite these findings, and despite the fact that the Defendants have presented no evidence whatsoever that they ever instituted any "litigation hold," the Magistrate Judge incorrectly concluded that "it is entirely reasonable that defendants believed that their production [of three hours of footage from a single security camera] fully complied with their obligations under plaintiff's preservation letter." [Doc. 34 at 10].

2

Following "their routine data destruction policy" is the exact opposite of what the well-established law requires when a party reasonably anticipates litigation, such as Defendants undisputedly did here. The well-established law requires the Defendants to <u>preserve all unique evidence that might potentially be relevant</u> to Plaintiff's claims, not just cherry-pick what evidence they feel is relevant and destroy everything else. This law applies as soon as a party reasonably anticipates litigation, regardless of whether Plaintiff ever actually sent a preservation letter. Plaintiff's preservation letter, which specified that Defendants "*preserve all evidence relating to this incident, including, but not limited to, <u>any security camera footage of the locker room and surrounding areas</u>*," went above and beyond what the law requires. These additional security camera videos from the night of the accident admittedly existed, but have now all been destroyed by Defendants and cannot be restored or replaced through additional discovery. Plaintiff cannot obtain this evidence from any other source. Therefore, Plaintiff is severely prejudiced because she will never know exactly what was shown on these highly relevant security camera videos. The Defendants should be sanctioned for their egregious conduct.[1]

The amended Fed. R. Civ. P. 37(e) permits a court to order curative measures or sanctions if electronically stored information that should have been stored in anticipation of litigation is lost "because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Under Rule 37(e), a court may issue an adverse inference instruction upon finding that a party acted with intent to deprive another party of the use of electronic evidence in litigation. Fed. R. Civ. P. 37(e)(2).

---

[1] At an absolute minimum, Plaintiff should be awarded monetary sanctions in the form of costs and attorneys' fees in connection with making the spoliation motion "to punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *Field Day, LLC v. Cty. of Suffolk*, No. CIV.A. 04-2202, 2010 WL 1286622, at *14 (E.D.N.Y. Mar. 25, 2010).

Even if no intent to deprive is found, but the moving party was prejudiced by the destruction of the electronic evidence, a court may impose less severe sanctions that place the prejudiced party in the position that it would have been had the destruction not occurred. Fed. R. Civ. P. 37(e)(1). Thus, here, the Court may order sanctions with respect to the lost security camera footage if the Court finds that Defendants failed to take reasonable steps to preserve the relevant evidence, and it cannot be restored or replaced through additional discovery.

The USTA's failure to institute a "litigation hold" or to institute any of the "widely-recognized steps to preserve" data is an important consideration for a court when evaluating culpability. *See Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 419 (S.D.N.Y. 2010) (defendant acted with a culpable state of mind in destroying or losing electronic evidence sought by plaintiffs during discovery; defendant's in-house counsel did not supervise or even approve the copying and wiping of laptop hard drives and was not involved in the transfer of email archives). It is well-established that "[o]nce a party reasonably anticipates litigation, it <u>must suspend its routine document retention/destruction policy</u> and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (emphasis added) (jury given an adverse inference instruction as sanction for the willful destruction of relevant e-mails by defendant's employees). Pursuant to this obligation, "anyone who anticipates being a party or is a party to a lawsuit *must not destroy <u>unique, relevant evidence</u> that <u>might</u> be useful to an adversary*." *Zubulake*, 220 F.R.D. at 217 (emphasis added). As is the situation here, Defendants' failure to even issue a written "litigation hold," may be considered particularly egregious "because that failure is likely to result in the destruction of relevant information." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).

Here, the Magistrate Judge concluded that the USTA was on notice since September 16, 2015 of their duty to preserve video of the locker room and surrounding areas and further concluded that "Defendants destroyed the remaining security camera video on the date set by their *routine data destruction policy*," [Doc. 34 at 11], yet ignores these facts and somehow concludes it was reasonable for the Defendants to believe their production of video footage from a single security camera unilaterally chosen by the USTA "fully complied with their obligations under preservations letter." [Doc. 34 at 11]. Plaintiff objects to the Magistrate Judge's conclusion as it runs contrary to the well-established law of preservation and Defendants' continuing duty to preserve all potentially relevant evidence. *See Zubulake*, 220 F.R.D. at 217.

The following undisputed facts prove that Plaintiff is entitled to sanctions: (1) Defendants were on notice of potential litigation, required to preserve all potentially relevant evidence, suspend its routine document retention/destruction policy and put in place a "litigation hold," no later than September 16, 2015, when the USTA received Plaintiff's preservation letter; (2) pursuant to this obligation, the USTA was required to *preserve* and *not destroy any unique, relevant* evidence that *might* be useful to the Plaintiff; (3) Defendants have not provided *any evidence* whatsoever that the USTA ever fulfilled its legal obligations and implemented any "litigation hold," either by submitting an affidavit of an attorney with knowledge or by producing the written "litigation hold" itself; (4) even if there was evidence that Defendants put a "litigation hold" in place – there is none – the USTA has not provided any evidence that it subsequently upheld its obligations by having attorneys oversee compliance with any alleged "litigation hold," monitoring its efforts to retain and produce relevant evidence; (5) in Defendants' Rule 26 Initial Disclosures, they produced only three-hours of video footage from a single security camera that the USTA decided was the only relevant security footage; (6) by

5

Defendants own admission, on February 11, 2016 (only 160 days after Plaintiff's accident), months before a single deposition was taken, the USTA willfully destroyed *all* additional video footage from the night of Plaintiff's accident; and (7) that video footage cannot be restored or replaced through additional discovery and Plaintiff can never know what was shown on that footage. These undisputed facts are more than enough to show Plaintiff has been prejudiced and warrants severe sanctions against the USTA.

      First, the Magistrate Judge erred in ignoring the fact that, in opposition to Plaintiff's motion for sanctions, Defendants failed to present any evidence whatsoever that a "litigation hold" was ever instituted. In fact, Defendants conceded the exact opposite. (*See* Def. Memo of Law at 15 ("Defendants' employees simply carr[ied] out their *normal and everyday protocol* as it related to the preservation of security camera video footage.")) In other words, contrary to the well-established law, the USTA admittedly did nothing different in the face of anticipated litigation, and continued on as if it was business as usual. Failing to institute a "litigation hold" when the USTA was clearly on notice of the upcoming litigation is sanctionable conduct in-and-of-itself.

      Second, the Magistrate Judge failed to consider that once a party and its counsel "have identified <u>*all sources*</u> of <u>*potentially relevant*</u> information," they are under a duty to "retain that information [] and to produce information responsive to the opposing party's requests." *Zubulake*, 229 F.R.D. at 433 (emphasis added). "The <u>*continuing duty*</u> to supplement disclosures strongly suggests that parties also have a duty to make sure that discoverable information is not lost. Indeed, the notion of a 'duty to preserve' connotes an ongoing obligation. *Obviously, if information is lost or destroyed, it has not been preserved.*" *Zubulake*, 229 F.R.D. at 433 (emphasis in original and added). Instead, the Magistrate Judge incorrectly put the onus on the

6

Plaintiff to request the additional security camera footage, as if somehow Plaintiff should have known that the Defendants would destroy all additional security camera video 160-days after Plaintiff's accident. The Magistrate Judge's ruling prejudices the Plaintiff and rewards the Defendants for ignoring their well-established continuing duty under the preservation law and, in effect, rewards their egregious conduct. Such actions should not be condoned.

 Here, although the Defendants produced three-hours of video footage from a single security camera as part of their Rule 26 Initial Disclosures, the Defendants were under an *ongoing and continuing legal obligation* to identify <u>all additional sources</u> of <u>potentially relevant information</u> and make sure such discoverable information was not lost. *See Zubulake*, 229 F.R.D. at 433. The USTA clearly failed to do so. Obviously, since the security camera footage was destroyed, it has not been preserved. *Zubulake*, 229 F.R.D. at 433. The law does not allow the USTA to unilaterally pick-and-choose which sources of information they deem relevant and destroy everything else, as Defendants did here. Defendants' utter disregard of this well-defined legal duty is sanctionable in its own right.

 Even if the Court finds that the overwhelming circumstantial evidence in this case does not prove intent, Plaintiff has proven that the missing evidence may have been relevant to her claims, and that she has been prejudiced as a result of its destruction. The security video need not show Plaintiff's actual accident in order for it to be relevant or for the preservation law to apply. In this case, it is clear that videos showing the time before and after the incident are relevant to determine what led to the accident and capturing the critical timeline in and around the accident. *See Essenter*, 2011 WL 124505, at *5, *7 (granting motion for adverse inference instruction related to surveillance footage, and explaining plaintiff offered sufficient extrinsic evidence footage would have been favorable in the form of testimony from witnesses).

7

Moreover, this missing security camera footage may have well shown a different timeline of events than what certain witnesses testified to at their depositions. However, because all additional security camera footage was destroyed by the Defendants, the Plaintiff will never have the opportunity to prove whether these witnesses testified truthfully or not.

Additionally, "[c]ourts must take care not to hold [ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence, because doing so would subvert the ... purposes of the adverse inference, and would allow parties who have ... destroyed evidence to profit from that destruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (internal quotations omitted); *see also Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998) (where party loses opportunity to identify a particular document or documents likely to contain critical evidence because files that might contain the documents have all been destroyed, prejudiced party may be permitted inference in his favor, arising from destruction of evidence, so long as he has produced *some evidence* suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files).

Here, it is undisputed that there is no actual video footage of Plaintiff's accident, thus, making the destroyed security camera footage infinitely more important. Plaintiff has provided sufficient proof regarding the likely contents of the destroyed security camera videos suggesting that at least some of the videos would have been relevant to substantiating her claims. Namely, the destroyed videos would have allowed Plaintiff to confront WTA trainer Eva Scheumann regarding the alleged search she did for Ms. Bouchard before deciding that all WTA trainers could leave for the night. The destroyed video evidence would be decisive in determining the veracity of parts of Ms. Scheumann's testimony, and the timeline of events that evening.

However, Plaintiff is unable to verify or disprove Ms. Scheumann's claims because the USTA intentionally destroyed relevant security camera footage that cannot be restored or replaced. This extrinsic evidence tends to show that the destroyed video would have been favorable to the Plaintiff, and was thus relevant to her claims. Ms. Scheumman's decision to have the WTA trainers leave for the night after she allegedly could not find Ms. Bouchard, triggered the entire sequence of events which caused Ms. Bouchard's accident and resulting injuries. It shirks the spirt of the law on preservation to allow Defendants to get away with unilaterally destroying evidence while holding the Plaintiff, as the prejudiced party, to such a strict standard of proof regarding the likely contents of the destroyed security camera footage. *Residential Funding Corp.*, 306 F.3d at 109. Doing so allows the Defendants, as the party that destroyed the potentially relevant evidence, to profit from its destruction. *Id.* Further, relevance may be presumed when a party, as Defendants did here, intentionally destroys materials without attempting to preserve the relevant information. *See Dataflow, Inc. v. Peerless Ins. Co.*, No. 3:11-CV-1127 LEK/DEP, 2013 WL 6992130, at *8 (N.D.N.Y. June 6, 2013), *report and recommendation adopted in part,* 2014 WL 148685 (N.D.N.Y. Jan. 13, 2014).

Accordingly, the portion of the Magistrate Judge's Memorandum & Order concluding it was reasonable for Defendants to believe their limited production complied with the obligations under Plaintiff's preservation letter and that Plaintiff was not prejudiced by the destruction should be overruled and Plaintiff should be awarded sanctions that this Court feels are proper.

> **II.     The Sanction of an Adverse Inference Jury Instruction is Warranted Because Defendants' Intentionally Deprived Plaintiff of Relevant Security Camera Footage that Cannot Be Restored or Replaced Through Additional Discovery.**

Plaintiff also objects to the Magistrate Judge's conclusion that the record does not support Plaintiff's allegation that Defendants acted with an intent to deprive Plaintiff of

9

information when they destroyed video from the other security cameras on the premises in accordance with their internal data destruction policies.

It is well-established that "[w]hen evidence is destroyed willfully, the destruction alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 504 (S.D.N.Y. 2013) (internal quotations omitted); *Zubulake*, 229 F.R.D. at 431 (in the case of willful spoliation the degree of culpability gives rise to a presumption of the relevance of the documents destroyed). "[T]he intentional destruction of relevant records, either paper or electronic, after the duty to preserve has attached, is willful." *Pension Committee of University of Montreal Pension Plan*, 685 F. Supp. 2d at 465.

Here, instead of taking the routine precaution of instituting a "litigation hold," the Defendants intentionally discarded all additional security camera footage from the night of Plaintiff's accident. The relevance of this evidence must be presumed because all additional security camera footage was destroyed after the duty to preserve had attached and, now, by Defendants' own admission, the evidence cannot be restored or replaced through additional discovery. The Defendants' complete failure to take the most basic preservation steps, even after conducting their own internal investigation, receiving Plaintiff's preservation letter, and unilaterally producing the only security camera footage they felt was favorable to their case, provides the basis for the sanction of an adverse inference under Fed. R. Civ. P. 37(e). Further, Defendants utterly failed to rebut Plaintiff's evidence of intent by failing to squarely address the circumstances surrounding the destruction of the security video. The only reasonable conclusion that can be drawn from the circumstances herein is that the security footage in question was destroyed intentionally. The Magistrate Judge relied on the fact that Defendants did not destroy

all additional security camera video immediately following the accident and, instead, destroyed the remaining security camera video on the date set by their routine data destruction policy, in support of her conclusion that Defendants did not act with an intent to deprive Plaintiff of security camera videos.  [Doc. 34 at 11-12].

However, the Magistrate Judge's conclusion is belied by the record evidence and the well-established law.  Plaintiff had an absolute right to see for herself what those destroyed security videos actually depicted.  "While a litigant is under no duty to keep or retain every document in its possession[,] it is under a duty to preserve what it knows, *or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery* and/or is the subject of a pending discovery request."  *Zubulake*, 220 F.R.D. at 217 (emphasis added) (internal quotations omitted); *see also Essenter v. Cumberland Farms, Inc.*, 2011 WL 124505, at *7 (N.D.N.Y. Jan. 14, 2011) ("no doubt that a *video depicting the time before, during, and after an incident is relevant* to determine what actually happened at the moment the injury occurred.")

Defendants acknowledge that the singe security video they actually provided was relevant, but give no reasoning for why the tapes they destroyed were irrelevant.  Defendants want us to "take their word for it" that the video footage was irrelevant.  However, nothing that has occurred during this entire litigation would afford them that benefit of the doubt, nor is that what the law requires.  The USTA's pattern of deceptive conduct proves that the Plaintiff cannot trust the USTA to unilaterally determine what evidence is relevant, as evidenced by the fact that the Magistrate Judge correct sanctioned the Defendants for failing to disclose the full amount of their insurance coverage in violation of Defendants' obligations under Rules 26(a)(1)(A)(iv) and 37(c)(1) of the Federal Rules of Civil Procedure.

11

      This record evidence supports Plaintiff's contention that Defendants acted with an intent to deprive Plaintiff of relevant evidence when they knowingly destroyed all additional security camera video from the night of Plaintiff's accident.  To be sure, this evidence is largely circumstantial.  "But circumstantial evidence may be accorded equal weight with direct evidence, and standing alone may be sufficient to support even a determination that requires proof beyond a reasonable doubt."  *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (citations omitted).

      Contrary to the Magistrate Judge's conclusion, the failure to institute any "litigation hold" and subsequent destruction of potentially relevant evidence constitutes evidence of intent.  Moreover, this evidence is based on the Defendant's own express admission that they destroyed the security camera footage in accordance with their routine data destruction policies, not on any speculation on the part of the Plaintiff.  As such, Plaintiff respectfully requests that the Court modify that portion of the Memorandum & Order concluding that Defendants did not act with an intent to deprive Plaintiff of information when they destroyed video from the other security cameras on the premises in accordance with their internal data destruction policies.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court overrule and modify those portions of the Memorandum & Order and award Plaintiff: (1) an adverse inference jury instruction in favor of Plaintiff and against Defendants for intentionally depriving Plaintiff of relevant security video evidence; (2) punitive monetary sanctions; (3) an assessment against Defendants for the costs and fees incurred by Plaintiff on this motion; and/or (4) such other relief as this Court deems just and proper.

Dated: August 24, 2017

        Respectfully Submitted,

        /s/ Benedict P. Morelli
        Benedict P. Morelli
        **MORELLI LAW FIRM, PLLC**
        777 Third Avenue, 31st Floor
        New York, New York 10017
        (212) 751-9800

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENIE BOUCHARD,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES TENNIS ASSOCIATION, INC., and USTA NATIONAL TENNIS CENTER, INC.,<br><br>                Defendants. | Civil Action No.:<br>15-cv-5920 (AMD)(LB) |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 24, 2017, I electronically filed the foregoing PLAINTIFF EUGENIE BOUCHARD'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM & ORDER with the Clerk of Court using the CM/ECF system. Parties may access this filing through the Court's system.

                                                /s/ Benedict P. Morelli
                                                Benedict P. Morelli

                                                *Counsel for Plaintiff*