**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **EUGENIE BOUCHARD** | ) |
| | ) |
| | ) |
| | ) Civ. Act. No.: |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) Judge Ann M. Donnelly |
| | ) |
| | ) Magistrate Judge Lois Bloom |
| **UNITED STATES TENNIS ASSOCIATION,** | ) |
| **INC., and USTA NATIONAL TENNIS** | ) **AMENDED JOINT PROPOSED** |
| **CENTER, INC.** | ) **PRETRIAL ORDER** |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**JOINT PRETRIAL ORDER**

The parties, by their undersigned counsel, hereby submit the following Joint Proposed

Pretrial Order pursuant to Judge Donnelly's Individual Practices and Rules, Rule 5(A):

1. *Caption*:

   Eugenie Bouchard v. United States Tennis Association, Inc., and USTA National Tennis
   Center, Inc., Civ. Act. No.: 1:15-cv-5920-AMD-MDG

2. *Parties and Counsel*:

   *Plaintiff Eugenie Bouchard*
   Benedict Morelli
   David Sirotkin
   Perry Fallick
   Morelli Law Firm, PLLC
   777 Third Avenue, 31st Floor
   New York, New York 10017
   Tel: (212) 751-9800
   Fax: (212) 751-0046

   Alan Kaminsky, Esq.
   Peter T. Shapiro, Esq.
   Marsha E. Harris, Esq.

4852-7919-8552.1

Candice Deaner, Esq.
**LEWIS BRISBOIS BISGARRD & SMITH, LLP**
77 Water Street, Suite 2100
New York, New York 10005
Tel: (212) 232-1300
Fax: (212) 232-1399

3.   *Jurisdiction*:

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that
the amount in controversy exceeds seventy-five thousand dollars ($75,000) and the
Plaintiff is a citizen of a state which is different from the state where Defendants are
incorporated and have their principal places of business.  Venue is proper in this district
because the accident occurred in the County of Queens, State of New York.

4.   *Claims and Defenses*:

Negligence.

It is Plaintiff's claim that on September 4, 2015, during the 2015 U.S. Open, Ms.
Bouchard sustained serious injuries, including a concussion, when she was caused to slip
and fall on a dangerous slippery condition created by the Defendants in the physiotherapy
room attendant to the women's locker room.  Specifically, a slippery cleaning substance
had recently been applied to the floor of the physiotherapy room by a USTA locker room
attendant who was employed by the Defendants.  The USTA locker room attendants were
admittedly not supposed to begin cleaning the physiotherapy room until all players,
including Ms. Bouchard, had left the premises for the evening.  As a direct result of the
Defendants negligence, Ms. Bouchard was caused to slip and fall and suffer the various
injuries and damages described below.

Defenses

Experienced female professional tennis players such as the Plaintiff know, or should know,
that the Women's Tennis Association ("WTA") staffs the physiotherapy room with trainers
at the Grand Slam events who provide various professional services to the players. Based
on such prior experience and knowledge, female professional tennis players such as the
Plaintiff know, or should know, the procedures and protocols as they relate to the operation
of the physiotherapy room adjacent to the women's locker room at the National Tennis
Center and the attendant rooms therein, as well as the protocols, procedures and
expectations between and among the players and the attendants and trainers working
therein. On the day of her alleged accident, Plaintiff acted in contravention to these
protocols and procedures and expectations.   Accordingly, Plaintiff knowingly and
voluntarily assumed all risks of injury inherent in and associated with the actions involved
in this lawsuit and is therefore barred from recovery under the doctrine of primary
assumption of risk. More particularly, primary assumption of the risk applies when a

4852-7919-8552.1

consenting participant in a qualified activity "is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks" *Custodi v Amherst*, 20 NY3d 83, 957 NYS2d 268, 980 NE2d 933 (2012). The doctrine applies squarely to the claim of an individual injured in a locker room shortly after play had ceased, see *Litz v Clinton Cent. School Dist.*, 126 AD3d 1306, 5 NYS3d 636 (4th Dept 2015) (primary assumption of risk applicable where plaintiff was injured immediately following hockey practice in an arena's locker room, which was designated for plaintiff's team's exclusive use).

Any and all risks of injury or dangers connected with the incident alleged in the Complaint were at the time and place mentioned obvious, apparent and inherent risks and dangers, which risks of injury and dangers were known or should reasonably have been known by the plaintiff. The physiotherapy room at the National Tennis Center is never dark; even when the lights are turned off; "twilight" lighting remains and partially illuminates the room. The conditions alleged by Plaintiff to have caused or contributed to her injuries or damages were open and obvious. Moreover, Plaintiff knew, or should have known, the physiotherapy room was closed at the time she attempted to enter.

The washing or cleaning of the floor of the physiotherapy room did not create anunreasonable risk of harm. *E.g., Curtiss v. Lehigh V. R. Co.,* 233 N.Y. 554 (1922), Samuels v Terry Holding Co., 227 App  Div 68, (1st Dept 1929). A floor that is slippery because of oil does not give rise to an inference of negligence.

Further, an experienced female professional tennis player knows, or should knows, that, at Grand Slam events, the WTA staffs the physiotherapy room with trainers who provide various professional services to the players. Based on such prior experience and knowledge, the players know, or should know, the procedures and protocols as they relate to the operation of the physiotherapy room adjacent to the women's locker room at the National Tennis Center and the attendant rooms therein, as well as the protocols, procedures and expectations between and among the players and the attendants and trainers working therein. On the day of her alleged accident, Plaintiff acted in contravention to these protocols and procedures and expectations.  Accordingly, the damages alleged to have been sustained by the Plaintiff, if any, were caused in whole or in part by the contributory negligence and culpable conduct of the Plaintiff, without any culpable conduct on the part of Defendants and, therefore, the amount of damages, if any, recovered by the Plaintiff should be dismissed in that proportion to which the culpable conduct attributed to the Plaintiff bears to the culpable conduct which caused said damages, if any.

Plaintiff claims the Defendants' actions caused her to sustain a myriad of economic damages. Causation is relevant both to liability and to damages, *Oakes v Patel*, 20 NY3d 633, 965 NYS2d 752, 988 NE2d 488 (2013).The issue of whether a defendant's negligence was a proximate cause of an accident is separate and distinct from the negligence determination. *Rodriguez v. Budget Rent-A-Car Sys., Inc*., 44 A.D.3d 216, (1st Dept 2007). Plaintiff's claims for economic damages are speculative and based on conjecture. An award for loss of future earnings may not be based upon speculation. *Davis v New York,* 264 AD3d 379, 693 NYS2d 230 (2d Dept 1999); *Eichler v New York,* 196 AD2d 524, 601

NYS2d 318 (2d Dept 1993); *Johnson v Danly Mach. Specialties,* Inc., 183 AD2d 592, 584 NYS2d 26 (1st Dept 1992). Such an award must be established with reasonable certainty, <u>Shubbuck</u> v <u>Conners,</u> 15 NY3d 871, 913 NYS2d 120, 939 NE2d 137 (2010); *Novko v State,* 285 AD2d 696, 728 NYS2d 259 (3d Dept 2001).

Plaintiff's economic loss, if any, was or will be replaced or indemnified, in whole or in part, from collateral sources, and the Defendants are entitled to have the Court consider the same in determining such special damages as provided by applicable law.

5. *Damages*:

As a result of this accident, Ms. Bouchard sustained significant damages.  The damages Ms. Bouchard will be claiming are set forth below.

Plaintiff seeks compensatory damages for her economic losses in the form of (1) loss of past income, (2) loss of future income and (3) medical expenses

Plaintiff additionally seeks compensatory damages in the form of: (1) physical pain and suffering; and (2) psychological and emotional pain and suffering.

Plaintiff further seeks: (1) an award of attorneys' fees as allowed by law; (2) pre and post-judgment interest as allowed by law; (3) an award of taxable costs; and (4) any and all such further relief as this Court deems just and proper.

Defendants' dispute the nature and categories of the damages alleged as speculative, non-compensatory and exaggerated.

The Plaintiff failed to mitigate her damages.

To the extent that Plaintiff alleges that she would have won prize money allotted to the winner of the women's singles bracket and/or other competitions at the stated tournaments in Japan and China and/or other tennis tournaments in the future, or to the extent that Plaintiff alleges that she has lost, or will lose, commercial endorsements, but for the incident of September 4, 2015 complained of, Defendants state that such claims would be entirely speculative and Defendants will hold the Plaintiff to strict proof thereof. Moreover, Plaintiff was able to secured additional commercial endorsements since the incident of September 4, 2015. There is no competent evidence that Plaintiff lost income and endorsements as a result of the hiatus in her competing due to the alleged incident at issue herein.

Plaintiff refused offers of medical attention and assistance made to her after she complained to attendants in the women's locker room of having fallen.  Instead, she left the premises.

Lastly, to the extent that Plaintiff claims on-going and permanent physical injuries and

sequelae to date, such a claim is inconsistent with Plaintiff's own admissions in various forms of social media and public commentary. An injured party is under a duty to make a reasonable effort to minimize the consequential damages, and if such reasonable effort is not made, he or she will be barred from recovering those damages which result from such failure. *Mayes Co. v. State,* 18 N.Y.2d 549, (1966).

6. *Jury or Bench Trial*:

   Plaintiff seeks a trial by jury and estimates that 10 trial days will be needed.

7. *Consent to Trial by a Magistrate Judge*:

   All parties have <u>not</u> consented to trial of the case by a magistrate judge.

8. *Stipulations*:

   1. Plaintiff Eugenie Bouchard is a professional women's tennis player.
   2. Ms. Bouchard played at the 2015 U.S. Open in the women's singles, doubles and mixed doubles tournaments.
   3. On September 4, 2015, Ms. Bouchard played two matches.  In the morning, she prevailed in her women's singles match and advanced to the fourth round.  In the evening, she prevailed in her mixed doubles match.
   4. Ms. Bouchard was scheduled to play two matches the following day.
   5. Ms. Bouchard's mixed doubles match finished at approximately 9:45PM on September 4, 2015.
   6. Ms. Bouchard entered the women's locker room at approximately 10:05PM.
   7. Ms. Bouchard subsequently exited the women's locker room at approximately 10:23PM.
   8. Ms. Bouchard spoke with the media in one of the designated USTA media rooms at some point before she re-entered the locker room.
   9. Ms. Bouchard re-entered the women's locker room at approximately 11:10PM.
   10. By 11:10PM, all of the trainers had left for the evening.
   11. Ms. Bouchard exited the locker room at approximately 11:26 p.m.
   12. On September 5, 2015, Ms. Bouchard withdrew from the doubles and mixed doubles competitions at the 2015 U.S. Open.
   13. On September 6, 2015, Ms. Bouchard withdrew from the singles competition at the 2015 U.S. Open.
   14. Ms. Bouchard withdrew from the 2015 Toray Pan Pacific Open, Wuhan Open and Prudential Hong Kong Open.
   15. As of the day of the accident, Plaintiff was endorsed by the following companies: 1) Nike; 2) Babolat; 3) Rolex; 4) Coca-Cola; 5) Usana Health Sciences; 6) Pinty's Delicious Foods, Inc.; 7) Unique Sports Products, Inc.; 8) Apple, Inc.; 9) Aviva Canada; 10) Rogers Communications Partnership.
   16. Some of those contracts were renewed since the time of the accident, such as the Usana Health Sciences, Rogers Communications, Babolat and Pinty's Delicious

4852-7919-8552.1

Foods contracts.

17. Since the day of the accident, Plaintiff entered into a new endorsement arrangement with Colgate.

18. At the time of the accident, Plaintiff's agent was Jill Smoller with WME/IMG.

9. *Witnesses*:

1) Plaintiff Eugenie Bouchard.  Ms. Bouchard must be contacted through counsel.  Ms. Bouchard was a party to the subject accident and is expected to testify to the facts surrounding the subject accident and her resulting damages.

2) Julie LeClair; 1225 University Street, Apt. 3002, Montreal, Quebec, H3B 9A9; Ms. LeClair is the Plaintiff's mother.  She will have general knowledge about the Plaintiff and the events following the subject accident, including, but not limited to, knowledge about Plaintiff's injuries, recovery and damages as a result of the subject accident.

3) Jill Smoller; WME Entertainment, 9601 Wilshire Blvd., 3rd Floor, Beverly Hills, CA 90210; Ms. Smoller is the Plaintiff's former agent.  Ms. Smoller was generally present with the Plaintiff at the 2015 U.S. Open.  Ms. Smoller will have general knowledge about Plaintiff's physical condition and knowledge about the economic losses sustained by Plaintiff as a result of this accident.  Ms. Smoller is also expected to testify that had this accident not occurred, and had Plaintiff progressed further at the 2015 U.S. Open, she would have been able to secure additional lucrative endorsement contracts and/or marketing ventures for Ms. Bouchard.

4) Peter Shearer, M.D.; One Gustave L. Levy Place, New York, NY 10029; Dr. Shearer was one of the Plaintiff's treating doctors at Mt. Sinai Hospital Emergency Department.  Dr. Shearer is expected to testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

5) Zachary Scott Wilson, M.D.; One Gustave L. Levy Place, New York, NY 10029; Dr. Wilson was one of the Plaintiff's treating doctors at Mt. Sinai Hospital Emergency Department.  Dr. Wilson is expected to testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

6) Benjamin McVane, M.D.; One Gustave L. Levy Place, New York, NY 10029; Dr. McVane was one of the Plaintiff's treating doctors at Mt. Sinai Hospital Emergency Department.  Dr. McVane is expected to testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

7) Dr. Jamie Levine; Medical Director, Brain Injury Rehabilitation, 240 E 38th Street, 15th Floor, New York, NY 10016; Dr. Levine was one of Plaintiff's treating doctors at NYU Langone Medical Center.  Dr. Levine is expected to

testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

8) Dr. Scott Delaney; 3801 University Street, Montreal, Quebec, H3A 2B4, Canada; Dr. Delaney was one of the Plaintiff's treating doctors at McGill University Health Center. Dr. Delaney is expected to testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

9) Dr. Alain Ptito; 3801 University Street, Montreal, Quebec, H3A 2B4, Canada; Dr. Ptito was one of the Plaintiff's treating doctors at McGill University Health Center. Dr. Ptito is expected to testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

10) Dr. Jen-Kai Chen; 3801 University Street, Montreal, Quebec, H3A 2B4, Canada; Dr. Chen was one of the Plaintiff's treating doctors at McGill University Health Center. Dr. Chen is expected to testify about the Plaintiff's injuries and her physical pain and suffering following the subject accident.

11) Deborah Cleare; 420 East 111th Street, Apt. 415, New York, New York 10029; Ms. Cleare was the Plaintiff's car service driver on the night of the subject accident. Ms. Cleare is expected to have knowledge and information about the facts surrounding the Plaintiff's car ride from the USTA National Tennis Center to Mt. Sinai Hospital immediately following the subject accident.

12) Kristy Stahr; 300 South Australian Avenue, West Palm Beach, Florida 33401; Ms. Stahr was employed as a WTA trainer and was working at the 2015 U.S. Open, including on the night of Plaintiff's accident. Ms. Stahr is expected to have knowledge and information relating to the events immediately following Plaintiff's match on the night of the subject accident.

13) Eva Scheumann; Steinbruchstrasse 70, 53773, Hennef, Germany; Ms. Scheumann was employed as a WTA trainer and was working at the 2015 U.S. Open, including on the night of Plaintiff's accident. Ms. Scheumann is expected to have knowledge and information relating to the events immediately following Plaintiff's match on the night of the subject accident.

14) Elaine Brady; 115 Victoria Drive, Apt. 4, Wimbledon, London SW19 6PR; Ms. Brady was a WTA trainer who was working at the 2015 U.S. Open. Ms. Brady is expected to have knowledge and information relating to the events following Plaintiff's match on the evening of the subject accident.

15) Carole Doherty; 100 Church Street, Onerahi Whangarei, New Zealand 0110; Ms. Doherty was a WTA trainer who was working at the 2015 U.S. Open. Ms. Doherty is expected to have knowledge and information relating to the events following Plaintiff's match on the evening of the subject accident.

16) Reshma Rathod; Address Unknown; Ms. Rathod was a WTA trainer who was working at the 2015 U.S. Open.  Ms. Rathod is expected to have knowledge and information relating to the events following Plaintiff's match on the evening of the subject accident.

17) Karen Owens; 466 East 10th Street, Apt. 3B, New York, New York 10009; Ms. Owens was employed by the USTA as the women's locker room supervisor at the 2015 U.S. Open and working on the night of the subject accident.  Ms. Owens is expected to have knowledge and information relating to the locker room and general area where the subject accident occurred, and of the events preceding the subject accident.

18) Sandra Benavides; 81-14 34th Avenue, Jackson Heights, Queens, New York 11372; Ms. Benavides was employed by the USTA as a women's locker room attendant at the 2015 U.S. Open and working on the night of the subject accident. Ms. Benavides is expected to have knowledge and information relating to the locker room and general area where the subject accident occurred, and of the events preceding the subject accident.

19) Christina Simmons; 505 East 175th Street, Apt. 312, Bronx, New York 10457; Ms. Simmons was employed by the USTA as a women's locker room attendant at the 2015 U.S. Open and working on the night of the subject accident.  Ms. Simmons is expected to have knowledge and information relating to the locker room and general area where the subject accident occurred, and of the events preceding the subject accident.

20) Dr. Brian D. Greenwald, M.D.; 65 James Street, Edison, New Jersey 08818; Dr. Greenwald is expected to testify about the nature and extent of the injuries sustained by the Plaintiff and the cause of those injuries.

21) Dr. Steven A. Fayer, M.D., 169 East 74th Street, New York, New York 10021; Dr. Fayer is expected to testify about the nature and extent of the psychological, mental, and emotional injuries sustained by the Plaintiff as a result of her accident and the cause of those injuries.

22) Richard Burton; 311 MacNaughton Hall, Syracuse, New York 13224; Mr. Burton is expected to testify about the nature and extent of the financial and economic damages sustained by the Plaintiff as a result of her accident.

23) Dr. Deena Casiero; 2800 Marcus Avenue, Ste. 102, New Hyde Park, New York 11042; Dr. Casiero was the Director of Player Medical Services at the 2015 U.S. Open.  Dr. Casiero also examined and treated the Plaintiff following the subject accident.

24) Danny Zausner; Chief Operating Officer, USTA National Tennis Center Incorporated; Mr. Zausner may be contacted through counsel.  Mr. Zausner is expected to have knowledge and information relating to the operations of the National Tennis Center and relating to the U.S. Open.

25) David Brewer; Chief Professional Tennis Officer & USO Tournament Director, United States Tennis Association Incorporated; Mr. Brewer may be contacted through counsel.  Mr. Brewer is expected to have knowledge and information relating to the operations of the USTA and relating to the U.S. Open.

26) Rachel Booth; Senior Counsel, United States Tennis Association Incorporated; Ms. Booth may be contacted through counsel.  Ms. Booth is expected to have knowledge and information relating to the accident investigation following Plaintiff's accident.  Defendants reserve the right to object to this proposed witness.

27) Michael Rodriguez; Director of Security, USTA National Tennis Center Incorporated; Mr. Rodriguez may be contacted through counsel.  Mr. Rodriguez is expected to have knowledge and information relating to the system of security cameras set up within the USTA National Tennis Center and its grounds, including their operation around the time of Plaintiff's accident.

28) Nicholas Kyrgois. Mr. Kyrgois is a professional tennis player and was the plaintiff's mixed doubles partner on the night of the alleged accident.  Mr. Kyrgois is expected to have knowledge and information regarding the Plaintiff's whereabouts on the night of the accident and her past and current level of play.

29) Thomas Hogstedt. Plaintiff's coach and former professional tennis player.  Mr. Hogstedt is expected to have knowledge and information regarding plaintiff's past, current and future tennis ability and level of play and factors contributing to her professional successes and failures.

30.) Nick Saviano. Plaintiff's former coach and former professional tennis player. Mr. Saviano is expected to have knowledge and information regarding plaintiff's past, current and future tennis ability and level of play and factors contributing to her professional successes and failures.

29) Dr. Francis Fontaine, M.D.. 1545 Boulevard de L'Avenir, Bureau 300, Laval Quebec H75 2N5 Dr. Fontaine is Plaintiff's personal physician and treated her prior to and following the alleged accident.

30)  Dr. William Barr. 233 East 34th Street, New York, NY 10016. Dr. Barr is a licensed Psychologist and Board Certified in Clinical Neuropsychology. He will testify regarding the plaintiff's  cognitive and behavioral functioning and the results of his neuropsychological examination conducted on November 9, 2016 and in

accordance with his report.  He will testify that is no reliable scientific or clinical data to indicate plaintiff is experiencing any continuing effects of her accident.

31) Dr. Teena Shetty, 525 East 71st Street, 5th Floor, New York, New York 10021. Dr. Shetty is a neurologist, Board Certified in neurology, neuromuscular medicine and electrodiagnostic medicine who isexpected to testify about the nature, severity and duration of Plaintiff's injury following the subject accident, and whether she sustained neurological impairment as well as other areas and topics identified and discussed in her report.

32.) Kenneth Shropshrine, Professor of Legal Studies and Business Ethics at The Wharton School and a Director/Founder of the Wharton Sports Business Initiative. 660 Jon M. Huntsman Hall, 3730 Walnut Street, Philadelphia, PA, 19104. Mr. Shropshire is expected to testify about Plaintiff's marketability as it existed both before and after the accident and the effect, if any, that the accident had on Plaintiff's then-existing endorsement contracts and/or potential renewal thereof, then-existing endorsement contract negotiations, whether Plaintiff lost any future endorsement opportunities and Plaintiff's ability to negotiate new future endorsement contracts with existing clients and/or new clients. He is expected to testify the accident did not negatively impact Plaintiff's marketability or her ability to continue to market herself in the future, that Plaintiff did not lose any endorsement-related income in the past and will not lose any endorsement-related income in the future, and that any claim regarding the loss of endorsement-related income would be entirely speculative.

33.) Alicia Molik. P.O. Box 6217, Swanbourne, Western Australia 6010. She is a former professional tennis player who enjoyed a career with a high singles ranking of number 8 in the world, and a doubles ranking of number 6. Ms. Molik is expected to testify about Plaintiff's play during the year before the accident, including recurring injuries, change of coach, pressure of success and decline in confidence, Plaintiff's probable performance and results at the 2015 US Open had she not withdrawn, and Plaintiffs probable results at the post-2015 US Open Asia tournaments, as well as other areas and topics identified and discussed in her report.

34.) John Tobias, TLA Worldwide. 500 Newport Center Drive, Suite 800, Newport Beach, CA 92660. Mr. Tobias is Plaintiff's current agent. He is expected to testify marketability as it currently exists, Plaintiff's current endorsement contracts and her ability to continue to market herself in the future.

10. *Deposition Testimony*:

The parties expect to bring all witnesses to testify live.  Should it become clear before trial that any of the parties will be unable to bring a witness to testify live, the parties shall supplement this report with the deposition testimony they intend to use at trial.

4852-7919-8552.1

Depositions of the following witnesses have been conducted: (1) Eugenie Bouchard; (2) Julie LeClair; (3) Jill Smoller[1]; (4) Deborah Cleare; (5) Kristy Stahr; (6) Eva Scheumann; (7) Elaine Brady; (8) Carole Doherty; (9) Karen Owens; (10) Sandra Benavides; (11) Christina Simmons; (12) Dr. Brian D. Greenwald; (13) Dr. Steven A. Fayer, M.D.; (14) Richard Burton; (15) Dr. William Barr; (16) Alicia Molik; (17) Kenneth L. Shropshire.

11. *Exhibits*:

   **Plaintiff's Exhibits (Plaintiff reserves the right to supplement this list)**:
   1) Still photos from security video footage from night of accident;
   2) Security video from night of accident;
   3) E-mail sent from Eva Scheumann to Plaintiff on night of accident with subject line "We Left;"
   4) Video footage of Plaintiff's singles match against Dominika Cibulkova at the 2015 US Open on September 4, 2015;
   5) Video footage of Plaintiff's mixed doubles match at the 2015 US Open on September 4, 2015;
   6) E-mail correspondence between Rachel Booth and Kristy Stahr dated August 5, 2016, August 19, 2016, September 6, 2016 and September 7, 2016; Defendants reserve the right to object to this proposed Exhibit
   7) Photos of women's locker room at USTA National Tennis Center taken by Plaintiff's counsel during site inspection on November 2016;
   8) Photo of Oasis Heavy Duty Floor Cleaner Label;
   9) 2015 Women's locker room schedule chart;
   10) 2015 Women's locker room staff sign-in sheets;
   11) USTA National Tennis Center floorplan;
   12) Printed endorsements containing Plaintiff's likeness;
   13) US Tennis Association timecard report for Karen Owens - date range 8/19/2015 – 9/13/2015;
   14) US Tennis Association timecard report for Sandra Benavides -date range 8/22/2015 – 9/18/2015;
   15) US Tennis Association timecard report for Christina Simmons – date range 8/22/15 – 9/11/15
   16) Photo -Overhead view National Tennis Center;
   17) 2015 U.S. Open Prize Money Schedule;
   18) 9/11/2015 Statement of prize money issued to Eugenie Bouchard (U.S. Open 2015);
   19) Forms 1042-s issued to Ms. Bouchard;
   20) Tournament fact sheet/draw sheet/Torray Pan Pacific Open 2015;
   21) Tournament fact sheet-2015 Dongfeng Motor Wuhan Open 2015;

---

[1] Per the Stipulation signed by all parties to this action, as well as signed by non-party William Morris Endeavor Entertainment, LLC, the parties to this action agreed that certain portions of Ms. Smoller's deposition transcript, found at Lines 45:10-47:20 and 48:4-11, and the corresponding testimony in the audiovisual recording of the deposition testimony are irrelevant to this matter and should be redacted and/or stricken from both the public and private record in this case to whatever extent possible.

22) Tournament fact sheet/draw sheet- China Open 2015;
23) Prudential Hong Kong Tennis Open – 2015 main draw singles/main draw doubles;
24) 2015 U.S. Open Draws (Women's Singles/Women's Doubles/Mixed Doubles);
25) Material Data Safety Sheet – Oasis 299 and label;
26) Messages contained in the "What's App Application" between Eugenie Bouchard and others;
27) Photograph "Discover the power of cool";
28) 2015 Official Grand Slam Rule Book;
29) WTA U.S. Open 2015 training hours;
30) Transcript of Eugenie Bouchard Press Conference of September 4, 2015;
31) Schedule of play – 2015 U.S. Open – days 4-7;
32) Supply request forms pertaining to women's locker room from August 24, 2015-September 8, 2015;
33) Plaintiff's Letter of Representation & Demand to Preserve Evidence dated September 16, 2015 – Defendants object to this proposed Exhibit
34) Nike USA, Inc. contract
35) Babolat VS S.A. Agreement
36)  Rolex Agreement
37) Coca-Cola Ltd. Agreement
38) Agreement between WME and E Bouchard January 1, 2015
39) Pinty's Endorsement Agreement
40)  Unique Sports Products, Inc. Agreement
41) Apple, Inc. License Agreement
42) Aviva Canada, Inc. Agreement
43) Rogers Communications Agreement
44) Tennis Canada and Eugenie Bouchard Agreement
45) Player Agreement 2016 WTA Tour Shenzen Open Event
46) Player Agreement 2016 WTA Tour Hong Kong Open Event
47) WTA Medical Records
48) Mount Sinai Emergency Room records from September 4, 2015
49) Dr. Fontaine Medical Records
50) Dr. Ptito Medical Records

**Defendants' Exhibits (Defendants reserve the right to supplement this list)**:
In addition to all Exhibits listed by Plaintiff, Defendants identify the following:
A.       2015 US Open Legal Consent Waiver (08/27/15)
B.       Excerpt from the Gland Slam/WTA Ranking Contract and Services Agreement
C.       WTA 30 page Player Development On-Line Course
D.       Treatment Hours as posted in the training rooms
E.       Match Preparation and Strategy
F.       Cool Pool Rules and   Photograph "Discover the power of cool" (identified by Plaintiff as proposed Exhibit 27)
G.       Player Development Training Modules
H.       WTA Medical Records

4852-7919-8552.1

I.      Mount Sinai Emergency Room records from September 4, 2015
J.      Dr. Fontaine Medical Records
K.      Cervical X-ray and Brain MRI of September 17, 2015
L.      Bouchard Timeline of Activities and Competition from Social Media, Public
        Media and Press
M.      Bouchard Social Media Postings
N.      Emails between Bouchard and WTA beginning Friday, September 11, 2015.
O.      Video reviewed by A Molik
P..     WME Representation Agreement
Q.      Email document dated December 22, 2016  with the subject line "Genie Payment
Breakdown."


Dated: New York, New York
       December 15, 2017

                              **MORELLI LAW FIRM, PLLC**



                        By: _____
                             Benedict P. Morelli
                             EDNY Bar No.: BM6597
                             bmorelli@morellilaw.com
                             David T. Sirotkin
                             EDNY Bar No.: DS4863
                             dsirotkin@morellilaw.com
                             Perry S. Fallick
                             EDNY Bar No.: PF1165
                             pfallick@morellilaw.com
                             777 Third Avenue, 31st Floor
                             New York, New York 10017
                             Tel:  (212) 751-9800
                             Fax: (212) 751-0046

                             *Attorneys for Plaintiff Eugenie Bouchard*


                        LEWIS BRISBOIS BISGAARD & SMITH

                        By:     /s/ Alan Kaminsky
                                Alan Kaminsky

                                Alan.kaminsky@lewisbrisbois.com

4852-7919-8552.1
                              13

Peter T. Shapiro

Peter.Shapiro@lewisbrisbois.com
Marsha E. Harris

Marsha.harris@lewisbrisbois.com
Candice Deaner

Candice.deaner@lewisbrisbois.com
77 Water Street, Suite 2100
New York, New York 10005
Tel: (212) 232-1300

*Attorneys for Defendants*